165 N.J. Super. 553 (1979)
398 A.2d 918
LOUISE WAGNER, PLAINTIFF-RESPONDENT,
v.
EDWARD A. WAGNER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1979.
Decided January 30, 1979.
*554 Before Judges LYNCH, CRANE and HORN.
Mr. Malcolm Blum argued the cause for appellant (Messrs. Carlton and Blum, attorneys).
Mr. Adrian M. Unger argued the cause for respondent (Messrs. Milton M. and Adrian M. Unger, attorneys).
PER CURIAM.
This appeal by defendant brings up for review an order of the trial judge made on January 12, 1978 modifying paragraph 2C of the final judgment by providing visitation for defendant with his two children:
* * * (c) on alternate weekends commencing Saturday upon the completion of Hebrew School; on those Saturdays on which visitation is scheduled and Hebrew School is not in session, defendant may commence visitation on Friday evenings; * * *.

* * * * * * * *
Defendant urges that the judge's decision is inconsistent with the best interests of the children in that it deprives the *555 children of spending more time with him. Salmon v. Salmon, 88 N.J. Super. 291 (App. Div. 1965); Fiore v. Fiore, 49 N.J. Super. 219 (App. Div. 1956), certif. den. 28 N.J. 59 (1958). Defendant also contends that the judge's failure to inform him or his attorney of his findings resulting from his private interview with the children was improper and constituted prejudicial error.
The judge's determination embodied in the challenged order was made without the benefit of a plenary hearing. Plaintiff contends that a plenary hearing was waived by defendant. This may be so, but the matter of visitation is so important, especially during the formative years of a child, that if a plenary hearing will better enable a court to fashion a plan of visitation more commensurate with a child's welfare, nonetheless it should require it. Fiore v. Fiore, supra.
The essence of defendant's argument before us under the first point is that a unilateral decision of plaintiff, defendant's former wife, to have the children undergo religious instruction every Saturday morning until 12:30 P.M., destroyed the then pending visitation arrangement with defendant, to the disadvantage of the children.
The parties were married on May 31, 1964. Two children were born of the marriage, namely, Elise, born July 6, 1967, and Elizabeth, born March 19, 1970. Although custody was awarded to plaintiff, the judgment provided liberal visitation and communication for defendant. It included one day of every weekend and one weekend every three weeks. Soon after the divorce judgment was entered, the parties themselves changed the weekend visitation to every other weekend (from Friday afternoon to Sunday evening), since defendant had moved to Westchester County, New York, a distance of 52 miles from plaintiff's residence. At the same time defendant relinquished the visitation of one day of every other weekend, as well as one week-day night in each week.
This arrangement continued until right after Labor Day 1976, when plaintiff, without prior notice to or consultation with defendant, entered the children in Hebrew School, *556 which, as stated, required their attendance every Saturday morning. Parenthetically, plaintiff disclaims any intention of coercing or otherwise punishing defendant because defendant was resisting plaintiff's efforts, initiated in October 1974, to secure increased support payments. Certainly, since visitation is primarily for the benefit of the children of a marriage, defendant's obligation to support the children is independent of his visitation rights. Fiore v. Fiore, supra at 227. Plaintiff also asserts that the somewhat sudden need to enroll the children in the school when she did so resulted from a requirement of the rabbi in charge of the school.
Plaintiff then told defendant, after the children's matriculation in the school, that thenceforth he could not take the children until after 12:30 P.M. on each of the Saturdays or the weekends when he was accustomed to have visitation with them. Except for summers, when the school was not in session, this resulted in the effective loss of the Saturdays as visitation days, due to the distance of travel and the children's needs to rest therefrom. Defendant's motions in the trial court in his efforts to effect the earlier visiting arrangement resulted in the order which is quoted above.
There is no question of defendant's interest, love and excellent relationship with the two girls. Except for a somewhat bizarre undated letter written by Elise and delivered by plaintiff to her attorney, there appears to be no indication of the existence of anything but a happy and loving relationship between the children and their father. This strange letter, purporting to have been written by Elise on her own initiative and as her own belief, did not merit serious attention, in view of the other facts.
As to the in camera interview with the children, plaintiff asserts that our law which holds that a judge "is clearly obliged to disclose for the record his findings as to the capacity of the child to express a preference," Lavene v. Lavene, 148 N.J. Super. 267, 272 (App. Div. 1977), certif. den. 75 N.J. 28 (1977), in reliance upon Callen v. Gill, 7 N.J. 312 (1951), is applicable only to cases *557 involving custody, but not visitation. We fail to see any reason why the enunciated principles of disclosure should not also apply to a private interview by a judge in a visitation case. The compelling reason for the rule is founded upon the parties' being informed of any information which could possibly influence the ultimate decision. And we believe that the rule is the same, whether the private interview is or is not acknowledged by the judge to be influential in the formulation of his findings and decision.
The matter of parental visitation is not to be considered lightly. The advantages of continuous contact, love and affection between children and their estranged parents, particularly with the parent not having custody, cannot be emphasized too strongly.
Ordinarily the judge's discretion as to an appropriate visitation schedule in the light of the benefits of religious education should not be disturbed. DeVita v. DeVita, 145 N.J. Super. 120 (App. Div. 1976). Here, however, we are not satisfied that there was sufficient credible support for the challenged order. Defendant does not denigrate the value of the religious education for the children. He seeks a full opportunity to demonstrate that that education can be provided consistently with the customary visitation. We agree that the alternatives were not fully explored. We conceive that the needs of the children for both their father's visitation and Hebrew education may possibly be accommodated if the alternatives to the curtailed visitation were fully developed. Where there is a conflicting situation, a method of achieving for the children the benefits of their visitation with defendant and of their religious training should be sought, even at the expense, perhaps, of less than ideal religious instruction. Any deficiencies in such education may be overcome if the children desire it when they become more mature.
For these reasons we are of the view that the cause merits full reconsideration. Accordingly, the cause is remanded for the purpose of ascertaining through a plenary hearing *558 whether the visitation problem created by the timing of the religious training may not be resolved. The present order shall remain in effect until the remanded issue is determined by the trial court. We direct that such hearing and determination be concluded within 60 days. We do not retain jurisdiction.