In re the MARRIAGE OF Carol Ann DAVIDSON, Respondent–Appellant,

and

Robert Alden Davidson, Petitioner–Appellee.

No. 15A01–8807–CV–210.

Court of Appeals of Indiana, First District.

July 6, 1989.

Rehearing Denied Aug. 9, 11, 1989.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, for respondent-appellant.

Harlan H. Hoffman, Lawrenceburg, for petitioner-appellee.

BAKER, Judge.

### STATEMENT OF THE CASE

Respondent-appellant, Carol Ann Davidson (Carol), appeals the provisions of a Dearborn Circuit Court decree of dissolution dissolving her marriage to petitioner-appellee, Robert Alden Davidson (Robert), relating to the division of marital property and the determination of child support and visitation.

We affirm in part, reverse in part, and remand.

### STATEMENT OF THE FACTS

Robert and Carol were married on July 23, 1966. The marriage produced one child, a daughter, Kim, nine years old at the time of the dissolution. Robert and Carol permanently separated in June of 1987, and

Robert filed a petition for dissolution on September 30, 1987. A final hearing on the petition was conducted on March 2 and 3, 1988, following which the trial court took the matter under advisement. On March 25, 1988, the trial court entered an order dissolving the marriage and dividing the property of the parties as follows:

| CAROL | | ROBERT | |
|---|---:|---|---:|
| Home (Fair Market Value—$152,000) | $87,000 | Home | $65,000 |
| | | Other Real Estate | 7,500 |
| 1980 Datsun | 600 | 1986 Bronco | 10,500 |
| 1975 Grenada | 600 | Farm Equipment | 4,000 |
| Savings Accounts (5) | 30,422 | Teacher's Retirement Account | 9,866 |
| Checking Account | 5,000 | Checking Account | 5,297 |
| Money Market Accounts (2) | 9,600 | IRA | 1,568 |
| IRA | 1,568 | IRA | 13,485 |
| Union Central Account | 1,574 | Life Insurance Policy | 3,115 |
| Certificate of Deposit | 14,454 | KEOGH Plan | 23,524 |
| | | Certificate of Deposit | 11,736 |
| | | Other Personal Prop. | 11,206 |
| NET DISTRIBUTION | $150,818 | NET DISTRIBUTION | $166,797[1] |

The trial court ordered the marital residence to be sold within one year with the proceeds of the sale to be applied to satisfy Robert's interest in it. In the interim, Carol was permitted to continue to use the residence until such sale without paying rent. Similarly, the undistributed household furniture and furnishings with an estimated value of $12,700 were ordered to be sold within six months and the proceeds from such to be divided equally between Robert and Carol. Additionally, the trial court awarded custody of Kim to Carol, subject to Robert's reasonable visitation, and Robert was ordered to pay $90 per week in child support. The trial court also ordered Robert to pay all medical, dental, and hospitalization expenses incurred by Kim and covered by his insurance and to maintain hospitalization insurance on Carol. Finally, the trial court ordered a savings account in the sum of $2,000 and a life insurance annuity in the amount of $24,000 to be placed in the joint names of Robert, Carol, and Kim to be utilized solely for Kim's college education. Carol subsequently instituted this appeal.

## ISSUES

On appeal Carol claims the trial court erred in:

I. Determining the division of the marital assets.

II. Awarding to Robert the right to claim the tax exemption for Kim on his income tax return.

III. Determining the amount of Robert's child support obligation.

IV. Determining the time period of Robert's visitation.

V. Failing to award Carol the full amount of attorney fees she requested.

VI. Failing to require Robert to take Kim to catechism classes and Sunday religious services.

---

**1.** Four months prior to their separation, on February 1, 1987, Robert's father died, leaving him sole heir to a $183,765 estate. In the final decree dividing the parties' property, the trial court failed to formally award the inheritance to either Robert or Carol. We note that in its special findings of fact, however, the trial court stated that it placed "minimum value upon it for purposes of consideration in this marital estate."

*Record* at 50. From this statement, we perceive that the trial court awarded the entire inheritance to Robert. Similarly, both parties concede that the inheritance was awarded to Robert in total. For purposes of this appeal, therefore, the inheritance will be treated as having been awarded to Robert, which increases his share of the property division to $350,562.

ISSUE I: *Property Division.*

Carol asserts the trial court erred in determining the division of the marital assets. The division of marital assets is governed by IND.CODE 31-1-11.5-11(c) which provides as follows:

(c) The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that the equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

Traditionally, the division of marital assets has been a matter within the sound discretion of the trial court. *Schnarr v. Schnarr* (1986), Ind.App., 491 N.E.2d 561. However, this has recently been modified by statute as set forth above. *Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554. We may not reweigh the evidence or assess the credibility of witnesses; we consider only the evidence most favorable to the trial court's disposition. *Olds v. Olds* (1988), Ind.App., 531 N.E.2d 1219. Reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Chestnut v. Chestnut* (1986), Ind.App., 499 N.E.2d 783.

Carol argues that the trial court deviated from a fifty-fifty split, and that such was not supported by the statutory factors. Specifically, she contends the trial court did not consider her contributions as a homemaker, her inability to earn a wage, and her poor state of health. In support of her claim, Carol directs us to various evidence which reveals that the parties had been married for 22 years. She had contributed to the acquisition of all marital assets as a teacher and real estate broker prior to the birth of their daughter but had not worked for the past nine years. She was currently unemployed and needed to renew her teaching and real estate license in order to become employed. Moreover, Carol claims she suffered significant health problems which greatly diminished her ability to work full-time in any capacity or obtain health insurance. Robert, on the other hand, was a capable wage earner collecting a net income of $400 per week. Furthermore, his father had recently died leaving him sole heir to a gross estate valued at $183,765. Carol complains that the trial court failed to utilize the inheritance as a set off against some portion of the marital property. She claims that she was entitled to full interest in the marital home in exchange for the waiver of her right to share in the inheritance. Further, in light of the significant assets Robert would receive through his inheritance, he had little need of his equity in the home. Thus, there was no reason to compel sale of the home to satisfy such.

IND.CODE 31-1-11.5-11(c) imposes a presumption that an equal division is just and reasonable. The trial court may deviate from an equal division only when the presumption is rebutted. We observe that the trial court awarded Carol $150,818 in marital assets. Absent the inheritance, the trial court awarded 53% of the property to Robert and 47% to Carol. While this division is close, it is not equal. The statutory presumption speaks not in terms of approximation, but rather in terms of exactitude. The inequality is magnified if

Robert's inheritance is included, for the share of marital property distributed to Carol falls to 30%. We note that regardless of its source, property owned by the parties, including property acquired by inheritance, shall not be excluded from the marital assets, or placed beyond the trial court's authority for division. *Wilson v. Wilson* (1980), Ind.App., 409 N.E.2d 1169, *trans. denied.* However, the trial court need not divide the inheritance in any particular manner. *Id.* It is true that the fact that property was acquired by inheritance is a factor to be considered in deviating from the statutorily mandated presumption of an equal division. Although the trial court may divide the marital property unequally, the dissolution decree in this case indicates no reason for straying from the presumption of equality. If the trial court determines that a party opposing an equal divison has met his or her burden under the statute, the court must, in its findings and judgment, based on the evidence, state its reasons for deviating from the presumption of an equal division. While the evidence in this case may support an unequal division of property, we will not speculate as to the trial court's reasoning. We, therefore, remand this case to the trial court with directions either to follow the statutory presumption and effect an equal division of the marital property, or to set forth its rationale for not doing so.

■ Carol also complains that the trial court erred in failing to divide a bank account held in Robert's name which maintained a balance of $240 at the time of the final hearing. Carol argues that under IND.CODE 31–1–11.5–11, the trial court is required to divide all the marital property in order to put to rest all of the property rights in the decree.

While Carol's general statement of law is correct, her argument is not well taken. Reversal is not warranted when a trial court's order does not substantially prejudice a party. *Dean v. Dean* (1982), Ind. App., 439 N.E.2d 1378. We note that the total net marital estate, excluding the inheritance, had a value of $317,615. We consider the trial court's failure to divide the $240 bank account held in Robert's name to be of negligible importance. Its omission was de minimis and we will not address it further.

■ In relation to the property division, Carol also argues that the trial court erred in its disposition of an annuity and bank account with an aggregate value of $26,000 held in joint names by Carol and Kim. The trial court ordered Robert's name to be placed on these accounts along with Carol and Kim's and required that the funds be utilized solely for Kim's college education. Carol contends these assets were Kim's and the trial court exceeded its authority in dividing such and designating how they were to be used.

A review of the record reveals that the annuity was opened by Carol and placed in Kim's name with Carol designated as trust agent. The bank account was also opened by Carol, but it is unclear whether it was placed in Kim or Carol's name. Regardless, it is evident Carol supplied the funds present in both accounts. We note, however that there has been no showing that the money in these accounts was given as a gift to Kim. Absent evidence which demonstrated this, the trial court was certainly within its authority to set apart this property and designate that it be used for Kim's college education. In the event the money in the accounts was Kim's property, however, we observe that Carol is without standing to object to the trial court's disposition of such. That is a matter for Kim to litigate in a separate suit. Accordingly, we refuse to address it further.

■ Finally, with regard to the property division, Carol asserts that the trial court erred in its award of hospitalization insurance coverage. She claims that insurance companies are required to carry exspouses for only a limited time period and because she is currently uninsurable, the trial court's award amounts to only temporary insurance coverage. Carol maintains the trial court's order must address what steps should be taken when her insurance coverage is terminated by Robert's employer and in the event she becomes uninsurable. Conspicuously absent from Carol's ar-

gument is citation to any authority which supports her contention that a trial court is required to provide for this as a matter of law. We are not aware of any authority which so states. It is the appellant's burden to demonstrate reversible error. Carol has failed in this regard. We find no error.

## ISSUE II: *Income Tax Exemption.*

Carol next asserts the trial court erred in awarding to Robert the right to claim the dependency income tax exemption for Kim on his income tax return. Specifically, she contends that under current federal law, the trial court had no authority to allocate the exemption to Robert.

Our research discloses that this is a question of first impression in Indiana. Prior to January 1, 1985, the Federal Internal Revenue Code clearly authorized state courts to allocate the dependency exemption to the noncustodial parent. I.R.C. § 152(e). In that section, Congress announced the general rule providing that a child of divorced parents would be treated as receiving over half of his support from the custodial parent. Thus, the custodial parent was entitled to claim the dependent child as an income tax exemption. At that time, however, the general rule was subject to two exceptions. These exceptions were commonly referred to as the "$600 rule" and "$1200 rule." Under the $600 rule the noncustodial parent could claim the exemption if he provided at least $600 support during the year and the divorce decree provided that the noncustodial parent was entitled to the exemption. I.R.C. § 152(e)(2)(A). The $1200 rule allowed the noncustodial parent to claim the exemption if he provided $1200 or more during the calendar year and the custodial parent did not clearly establish that she provided more support than the noncustodial parent. I.R.C. § 152(e)(2)(B). This court interpreted the pre–1985 version of § 152(e) as allowing trial courts to allocate the exemption to the non-custodial parent at the time the court considered the financial arrangements between the parties. *Morphew v. Morphew* (1981), Ind.App., 419 N.E.2d 770.

In 1984, pursuant to the Tax Reform Act of 1984, § 152(e) was amended. Deleted from that section were the $600 and $1200 rules. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 423(a), 98 Stat. 494, 799. The new provision automatically allocates the exemption to the custodial parent unless that parent expressly waives the exemption in writing for the particular tax year in question. I.R.C. § 152(e). Thus, state courts no longer possess the authority to allocate the exemption to the non-custodial parent. *Lorenz v. Lorenz* (1988), 166 Mich.App. 58, 419 N.W.2d 770.

Absent a written waiver, the current federal law awards the exemption to the custodial parent. In the case at bar, Carol as the custodial parent, was entitled to claim Kim as a dependent for income tax purposes. We are not suprised that the trial court awarded the tax exemption to Robert. Carol testified that she had been unemployed for the past nine years and was physically unable to earn an income due to her poor state of health. The tax exemption will entitle Carol to nothing since she has no earnings to which the exemption can be applied. However, there is no evidence indicating she released her claim or waived her right to it in writing. Accordingly, the trial court erred in awarding the exemption to Robert.

## ISSUE III: *Child Support.*

Carol next contends the trial court erred in determining the amount of Robert's child support obligation. Carol requested that Robert be required to pay $125 in child support; the trial court fixed Robert's child support obligation at $90 per week.

Determination of proper child support is within the sound discretion of the trial court and depends upon the particular facts and circumstances disclosed by the evidence in each case. *Hunter v. Hunter* (1986), Ind.App., 498 N.E.2d 1278. The trial court's determination will not be disturbed on appeal unless the trial court abused its discretion or acted contrary to law. *Hoyle v. Hoyle* (1985), Ind.App., 473 N.E.2d 653. A child support order constitutes an abuse of discretion when the order

entered is clearly against the logic and effect of the facts and circumstances before the trial court, including any reasonable inferences to be drawn therefrom. *Olson v. Olson* (1983), Ind.App., 445 N.E. 2d 1386.

IND.CODE 31–1–11.5–12(a) sets forth the appropriate considerations governing the determination of child support as follows:

> Sec. 12. (a) In an action pursuant to section 3(a), 3(b), or 3(c) of this chapter, the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct, after considering all relevant factors including:
>
> (1) the financial resources of the custodial parent;
>
> (2) the standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered.
>
> (3) the physical or mental condition of the child and the child's educational needs; and
>
> (4) the financial resources and needs of the noncustodial parent.

■ Carol argues that the trial court erroneously based its determination of child support upon one factor: Robert's level of earnings at the time of the final hearing. She claims the trial court placed undue emphasis on Robert's current level of income when it was demonstrated he had earned greater income in the past, disregarded his financial resources, including the inheritance, and failed to consider any of the other relevant factors.

The evidence reveals that during the year prior to the final hearing, Robert earned a gross income of $53,000. Of that amount he earned $13,000 as a teacher and $40,000 from real estate commissions. Robert testified, however, that his earnings from real estate sales fluctuated dramatically and that his average annual income from such was less than $40,000 per year. He estimated that on the average his net income was $400 per week. Moreover, he testified he planned to quit selling real estate and begin teaching full time. Carol,

on the other hand, had earned relatively little if any income over the past nine years, needed to renew her teaching and real estate license to become employed in those fields, and was not capable of working full time due to her health.

We are not persuaded that the trial court failed to consider all of the relevant statutory factors in determining the amount of Robert's child support obligation. After the dissolution was initially filed, the trial court entered a provisional support order requiring Robert to provide $70 per week towards Kim's support. This figure was based upon Robert's similar estimate that he earned an average weekly net income of $400. During the hearing Carol failed to present any evidence outlining the expenses she incurred in raising Kim. Following the hearing, the trial court increased Robert's support obligation to $90 per week and ordered him to maintain medical, dental, and hospitalization insurance on Kim. Additionally, it set aside a substantial sum of money and designated that it be utilized to pay for Kim's college expenses.

■ The parties total resources must be taken into account when determining the amount of a child support award. This consideration is mandated by statute. IND.CODE 31–1–11.5–12(a)(1) and (4). In light of our resolution of the first issue, however, we recognize that there exists the probability that the allocation of property between the parties will change. Similarly, our disposition of the second issue regarding the tax exemption significantly impacts upon the parties. In consideration of these circumstances, therefore, we reverse and remand the cause to the trial court on this issue in order to permit it to redetermine the award of child support in keeping with the parties' income and resources.

ISSUE IV: *Visitation.*

Carol next contends the trial court erred in setting the time period of Robert's visitation with Kim. Specifically, she asserts the trial court erred in allowing visitation to begin at 4:00 p.m. on Friday because Kim is

allegedly still in school at that time, and in failing to set a time visitation is to end.

In the final divorce decree, the trial court issued the following order regarding visitation:

> That the respondent is hereby granted the care, custody and control of the minor child, Kimberly Lynn Davidson, subject to reasonable visitation by the petitioner as set out under the provisions of Court Rule 16.3 of the Dearborn Circuit Court, except that the required hours should be every other weekend from 4:00 p.m. on Friday rather than 6:00 p.m.

*Record* at 50–51.

■ IND.CODE 31-1-11.5-24(a) provides that "a parent not granted custody of the child is entitled to reasonable visitation rights...." Nowhere in Carol's argument does she contend that the visitation schedule established by the trial court was unreasonable. Rather, she merely points to the alleged deficiencies described above. We will review a trial court's order regarding visitation only to determine whether there has been an abuse of discretion. *In re Marriage of Larkin* (1984), Ind.App., 462 N.E.2d 1338.

■ We observe that Carol agreed to allow visitation as agreed upon by the parties. At the final hearing Robert requested visitation every weekend from 4:00 p.m. on Friday to 4:00 p.m. on Saturday. Carol disagreed only insofar as she wished visitation to take place every other weekend. Otherwise, she did not anticipate that there would be any difficulty in complying with the trial court's "regular" visitation schedule. The trial court ordered visitation to occur as designated under Court Rule 16.3 of the Dearborn Circuit Court except with a modified starting time of 4:00 p.m. on Friday. Carol was fully aware Robert had requested visitation every Friday at 4:00 p.m. Although she contested his request for visitation every weekend, she made no mention that she could not comply with a 4:00 p.m. start time. Moreover, there was absolutely no evidence in the record indicating what time Kim attended school. In light of the evidence presented at trial, there has been no showing that the trial court's order requiring visitation to begin at 4:00 p.m. on Friday was an abuse of discretion.

■ With regard to Carol's complaint regarding the trial court's alleged failure to set a time visitation was to end, Carol has failed to meet her burden to establish reversible error. The trial court ordered visitation to take place as set forth under its local court rules. Carol, however, has failed to make those local court rules a part of the record before us on appeal. It is certainly possible that Dearborn Circuit Court Rule 16.3 establishes, among other things, a termination time for visitation. Without the opportunity to examine that rule, we cannot properly review Carol's claim. Consequently, we find no error.

ISSUE V: *Attorney Fees.*

■ Carol contends the trial court erred in determining the amount of attorney fees to award her. At the final hearing Carol requested the trial court award her $2500 for attorney fees; it granted her the sum of $800. On appeal, she claims the award is inadequate.

IND.CODE 31-1-11.5-16(a) provides that:

> The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees....

The trial court has wide discretion in determining the amount of attorney fees to award in a marriage dissolution action. *Hawblitzel v. Hawblitzel* (1983), Ind.App., 447 N.E.2d 1156. This court will disturb an award of attorneys' fees only when a clear abuse of discretion is demonstrated. *In re Marriage of Lay* (1987), Ind.App., 512 N.E.2d 1120. The reasonableness of an attorney fee is a matter of which the trial judge, being a lawyer, may take judicial notice. *McBride v. McBride* (1981), Ind.App., 427 N.E.2d 1148. The trial court may choose to award an amount less than the full reasonable value of an attorney's services. *Johnson v. Johnson* (1979), 168 Ind.App. 653, 344 N.E.2d 875.

The evidence on the reasonableness of the attorney fees requested here is meager at best if not virtually nonexistent. Carol baldly testified that after having received bills from three separate attorneys on the dissolution matter, she believed her request was reasonable. She failed to produce any evidence reflecting what work those attorneys performed, or the time they expended performing that work and the corresponding amount they charged for such. There was no evidence of the hourly rate the attorneys charged or whether such rates were commensurate with the standard rates charged by other attorneys in the community. The trial was not prolonged, lasting only a portion of two days, and the issues were not complex or difficult. The evidence presented primarily concerned the parties' assets, the bulk of which was maintained in various bank accounts and the parties' home. The entire pendency of the dissolution lasted less than six months. In light of the evidence before it, we cannot say the trial court abused its discretion in the award of attorney fees.

ISSUE VI: *Transportation to Religious Training.*

At the final hearing, Carol submitted a written settlement proposal in which she requested that the trial court require Robert to transport Kim to catechism classes and mass when he had visitation. In connection with this request the trial court entered the following finding:

> The Court notes that no one can be required to attend religious services as a condition to visitation.

*Record* at 48.

On appeal, Carol contends the trial court erred in failing to require Robert to transport Kim to weekly catechism classes and mass conducted during his visitation. In support of her argument she cites *Overman v. Overman* (1986), Ind.App., 497 N.E.2d 618.

In *Overman* the noncustodial father disputed whether he was required to take his son to catechism classes which took place during his visitation for 1½ hours on Saturday mornings. The custodial mother relied upon her right to determine the child's religious upbringing as provided under IND.CODE 31–1–11.5–21(b). After hearing evidence on the matter, the trial court determined that the father was not required to take the child to the catechism classes. On appeal, this court reversed the trial court's order. We observed that absent an unreasonable interference with the noncustodial parent's visitation rights, the custodial parent's right to choose religious training was paramount. Under the facts and circumstances of that case, we held that it was not an unreasonable interference with the father's visitation rights to be required to transport the child to a catechism class which lasted only 1½ hours.

We acknowledge the holding as set forth in *Overman*.[2] However, when the circumstances place the interests of the custodial and non-custodial parents in direct conflict with one another, we believe it proper to place the burden of going forward with the evidence to establish the basis and facts which will enable the trial court to make an appropriate ruling upon the party seeking the intrusion or asking the accomodation. Thereafter, once the custodial parent has met the burden of going forward, the burden falls upon the non-custodial parent to prove that the request would create an unreasonable interference with his visitation rights.

As we have stated, it was Carol's responsibility to raise the issue and apprise the trial court that there existed a potential problem regarding the catechism classes. At the final hearing, Carol did offer into evidence, for other purposes, a handwritten proposal wherein she requested that Robert be required to transport Kim to catechism classes and mass conducted during his visitation. Absent this request, which was not even so much as directed to the

---

2. We note that other jurisdictions view the noncustodial parent's right to visitation and the custodial parent's right to choose religious training as competing but co-equal interests. *See* *Wagner v. Wagner* (1979), 165 N.J.Super. 553, 398 A.2d 918; *Morris v. Morris* (1979), 271 Pa. Super. 19, 412 A.2d 139.

trial court's attention, Carol failed to submit any evidence whatsoever upon which the trial court could base its decision. Carol failed to offer into evidence the most basic of information describing for the trial court when the catechism classes or mass took place, how frequently the classes met, where each was conducted, or how long either lasted. In short, Carol wholly failed to meet her burden of going forward with the evidence on this issue. For that reason, there has been no showing that the trial court abused its discretion in failing to require Robert to transport Kim to catechism classes and mass conducted during his visitation.

Accordingly, for the reasons stated above, this cause is affirmed in part, reversed in part, and remanded to the trial court for proceedings not inconsistent with this opinion.

Judgment affirmed in part, reversed in part and remanded.

RATLIFF, C.J., concurs:

MILLER J., concurs in part; dissents in part with opinion.

MILLER, Judge, concurring and dissenting.

I disagree with the majority's decision to remand this case to the trial court in order to permit the trial judge to state his reasons, based on the evidence, for deviating from the presumption of an equal division of all the property, including the inheritance. I would remand with direction to the trial court to divide the property, including the inheritance, equally.

The majority is correct in concluding that our statute mandates an equal distribution of property unless a party who asserts a greater interest therein presents relevant evidence that an equal division would be unjust and unreasonable. In this regard, I have examined the evidence and testimony at the hearing. Carol and Robert were the only witnesses. I find no evidence presented by Robert—indeed I find no attempt by Robert to present evidence—on why an equal division of all the property, including the inheritance, would be unjust and unrea-

sonable. Robert's testimony identified the assets, some of the sources of the assets, and his estimates as to their value. His only reference to the inheritance—which, after all, is a major issue in this case—were his comments on two occasions that Carol should not receive any part of it. Certainly, there was nothing in Carol's testimony which aided Robert's case. Since Robert failed to carry his burden of presenting *any* evidence which would justify an unequal division of the property, the trial court has no other choice but to divide the property equally. If on remand the trial court does state a reason for an unequal division, we would have to reverse on appeal because such reason could not be based on the evidence presented at the trial.

The majority was also correct in finding that Robert had the burden of proving an equal division of the inheritance was unjust and unreasonable. The statute does not distinguish between gifts and inheritances received by a party early in the marriage and those received late. There is a statutory presumption that those gifts and inheritances must be divided equally irrespective of when they were received. Thus, the fact that the inheritance was received several months before separation does not establish that an equal distribution is unfair and unjust. Robert had the burden of showing the unfairness of an equal distribution, and he failed to do so. Cases cited by the trial court in its findings—*McBride v. McBride* (1981), Ind.App., 427 N.E.2d 1148 and *Osborne v. Osborne* (1978), 174 Ind.App. 599, 369 N.E.2d 653—which held that the husbands were entitled to their inheritances unless the wives presented evidence that they had contributed to the acquisition, preservation or enhancement of the inherited property—are no longer pertinent because of our current statute. Carol in this case, had no such burden—it rested upon Robert.

I concur with the decision of the majority on all of the other issues decided.