**In the Matter of the Honorable Jeffrey V. BOLES, Respondent, Judge of the Hendricks Circuit Court.**

**No. 32S00-9002-JD-98.**

Supreme Court of Indiana.

June 29, 1990.

As Amended July 2 and 23, 1990.

Clarence H. Doninger, Stark, Doninger, Mernitz & Smith, David M. Mattingly, Ice Miller Donadio & Ryan, Indianapolis, for respondent.

Bruce A. Kotzan, Counsel, Indiana Com'n on Judicial Qualifications, Meg W. Babcock, Staff Atty., Indiana Com'n on Judicial Qualifications, Indianapolis, for Indiana Com'n on Judicial Qualifications.

SHEPARD, Chief Justice, and DeBRULER and DICKSON, Justices.

After forebearing a long history of disruptive behavior by Jeffrey V. Boles, Judge of the Hendricks Circuit Court, the Indiana Commission on Judicial Qualifications initiated formal charges against him alleging two recent violations. After initially denying that his actions were wrong in any way, Respondent Boles has now admitted that he committed misconduct and filed a written apology for his actions. Respondent and the Commission have proposed to this Court a sanction of sixty (60) days suspension without pay.

Our review of the facts persuades us that Respondent Boles did in fact violate the Code of Judicial Conduct on both counts filed by the Commission. In assessing what sanction should be imposed, we

have examined information provided by the Respondent and by the Commission. This information demonstrates that the Respondent has built a good record of community service and participated in a variety of activities within the legal community. It also shows that the Respondent has ordered prisoners executed without appeal, granted probation to a convicted murderer though Indiana law prohibits probation for murderers, and frequently used his office to intimidate citizens and lawyers for his own personal purposes. In the past a number of judges have chosen to resign in the face of charges brought by the Commission rather than run the risk of suspension or removal. Suspending Respondent for sixty days without pay is the highest sanction actually imposed by this Court in fifteen years. But for Boles' public apology and the Commission's recommendation, we would be inclined toward a stiffer penalty.

## A.  *Case History*

The Indiana Commission on Judicial Qualifications (Commission) and the Respondent have entered into and now tender for this Court's approval, a Statement of Circumstances and Conditional Agreement for Discipline. The Commission initiated the above-captioned cause with the filing of a Notice of Institution of Formal Proceedings and Statement of Charges on February 5, 1990, alleging judicial misconduct on the part of the Respondent. On February 9, 1990, the Respondent filed a Verified Answer, wherein he admitted the facts alleged in the misconduct charges, but indicated that he believed that his actions did not constitute misconduct. In his Answer, Respondent specifically waived his right to a hearing before Masters under Admission and Discipline Rule 25(VIII)(I), and requested the Commission to consider his Answer and make any decision on the merits it deemed appropriate.

On March 13, 1990, the Commission filed its Recommendation for Discipline and Memorandum Brief in Support of Recommendation together with exhibits. Believing misconduct was demonstrated, the Commission recommended that Respondent be suspended as Judge of the Hendricks Circuit Court for a period of not less than three nor more than six months. Respondent then had an opportunity to file a petition for review with this Court under Admission and Discipline Rule 25(VIII)(P). Several requests for extension of time to file the petition for review and brief were granted to Respondent, with the last being granted as a result of the Commission and the Respondent requesting more time in order to explore the possibility of reaching an agreement.

On June 18, 1990, the Commission and the Respondent did reach an agreement giving rise to the present "Statement of Circumstances and Conditional Agreement For Discipline." In that Agreement the Respondent again admitted that the facts contained in the charges are true, and further admitted that such acts constitute judicial misconduct.

In making a decision on whether to accept this Conditional Agreement, we engage in a two-step analysis. First, it must be determined whether the charged conduct amounts to judicial misconduct. Second, if judicial misconduct is found, then it must be determined whether the agreed sanction is appropriate. Under the first step, it is important to review the two charges made by the Commission. Both charges alleged that the Respondent engaged in willful misconduct in office, conduct prejudicial to the administration of justice, and conduct violating Canons 2, 3, and 7 of the Code of Judicial Conduct.

## B.  *Count I—Attorney Fees for a Juvenile*

The facts pertinent to the first charge were that a juvenile was charged with delinquency on an allegation of sexual battery in the Hendricks Circuit Court, Juvenile Docket. In addition, while that charge was pending, the juvenile was separately charged with criminal conversion in the Hendricks Circuit Court, Criminal Docket. Phillip L. Gundlach was appointed to represent the juvenile in the juvenile proceeding. A salaried public defender was appointed to represent the juvenile in

the criminal proceeding. Gundlach's representation in the juvenile proceeding was terminated after four weeks when Respondent dismissed that case. Gundlach submitted a claim to the Hendricks Circuit Court for 43.2 hours of service and $22.80 in expenses. The customary hourly rate for such services was $35, which would have made the total claim $1534.80. Respondent's order granted the fees, but provided that the County pay Gundlach $322.80 and that the juvenile and his parents pay the balance of $1,212.00 directly to Gundlach. The juvenile was found guilty in the criminal case, and an order was entered requiring the juvenile to pay pauper attorney fees directly to the salaried public defender.

On December 2, 1988, John Pierce, a partner in the firm which employed Gundlach as an associate, wrote a letter to Respondent Boles questioning the method in which attorney fees were awarded to Gundlach. The Respondent reacted to the letter by vacating the award of attorney fees including those he had already approved for payment by the County. The County Auditor was instructed to return all claims for payment. Pierce's letter correctly pointed out that Respondent's attorney fee orders in this and other cases were in direct violation of I.C. 31-6-4-18, which at the time stated:

(a) The cost of any services ordered by the juvenile court for any child, or the child's parent, guardian, or custodian, and the cost of returning a child under I.C. 31-6-10 shall be paid by the county. The county council shall provide sufficient funds to meet the court's requirements.

(b) The parent or guardian of the estate of a child adjudicated a delinquent child or a child in need of services is financially responsible for any services ordered by the court unless:

(1) the parent or guardian is unable to pay for them;

(2) payment would force an unreasonable hardship on the family; or

(3) justice would not be served by ordering payment.

Clearly, it is the County's responsibility to first pay the attorney fees. If the juvenile is found to be delinquent, the judge may then, after fair hearing regarding finances of the parents, require repayment to the County. Because of Respondent's dismissal of the charges, the juvenile could not be found delinquent, and the parents cannot be required to repay the County.

After Respondent vacated the order which had granted Gundlach's attorney fees, the situation rapidly deteriorated. Attorney Pierce requested the Prosecutor of Hendricks County to make a determination as to whether Boles' orders for attorney fees should be the subject of a grand jury investigation. In addition, Kevin Hinkle, who is Mr. Pierce's law partner and President of the Hendricks County Council, referred to the Hendricks County Attorney the issue of Respondent allowing a salaried public defender to also receive additional payment directly from defendants or defendants' parents. The juvenile's father then filed a complaint against Respondent Boles with the Judicial Qualifications Commission and soon thereafter the father settled the claim with his son's public defender in the criminal case.

Respondent proceeded, without hearing, to enter an order that found the juvenile's parents were capable of paying the attorney fees of Gundlach, and that "under no circumstances would the taxpayers of Hendricks County be required to pay the legal costs on the extraordinary bill submitted by Mr. Gundlach." Further, Respondent ordered Gundlach to inform him whether he approved, adopted, consented to, or ratified the actions of Pierce and Hinkle, and the complaint against him filed with the Qualifications Commission. Believing Respondent Boles lacked the jurisdiction to place such a requirement on him, Gundlach sought an Emergency Writ of Prohibition from this Court, which was granted. *State ex rel. Gundlach v. The Hendricks Circuit Court*, (Cause No. 32S00-8904-OR-258). Later a Permanent Writ of Prohibition was issued by this Court prohibiting the enforcement of Respondent's order. While this Court recognizes a trial judge's discre-

tion to set pauper attorney fees, it was clear to this Court that Respondent was acting beyond his jurisdiction to seek an answer as to whether Gundlach ratified the actions of Pierce and Hinkle.

Finally, Respondent's order denying Gundlach's Motion to Correct Error stated that he would not allow Gundlach to cheat the taxpayers and steal from the public. Gundlach's appeal to the Court of Appeals resulted in a reversal. The Court of Appeals found that Respondent Boles clearly erred when he ruled that Hendricks County would not be required to pay Gundlach's fee. *Woolf v. State* (1989), Ind.App., 545 N.E.2d 590. The majority remanded for a determination of a reasonable attorney's fee. Judge Baker dissented in part, indicating that the initial order for $1,534.80 inherently carried with it the finding that the attorney fees were reasonable. He therefore would have ordered that amount paid without remanding for a further hearing.

## C. *Count II—Feud with the Commissioners*

The facts pertinent to the second charge involved a long running and highly public feud that Respondent had with the County Commissioners. It was Respondent's view that the County Commissioners on many occasions conducted business in violation of the Open Door Law. On one occasion, Respondent posted conspicuous notices around the Courthouse which stated "COMMISSIONERS AGENDA, What are they hiding?, What have they hidden?, DO NOT REMOVE, JEFFREY V. BOLES, JUDGE." In a second instance Respondent spent $59 of his own money for an advertisement on a calendar printed and distributed by the Hendricks County Sheriff's Department. The ad on the calendar was a large eyeball with a statement "Always watching—J.V. Boles." In a third situation, Respondent wrote several warning letters to the Commissioners on Hendricks Circuit Court stationery wherein he stated that their approval to purchase a certain piece of property was in violation of the Open Door Law. In order to block the purchase of the property, Boles filed a *Lis Pendens* Notice, a legal notice to all persons that effectively placed a cloud on the title. Respondent purported to take this action on behalf of all taxpayers in Hendricks County and signed the notice, "Jeffrey V. Boles, Judge, Hendricks Circuit Court." We note that there was no action regarding the Open Door Law pending before Respondent at that time.

## D. *Finding of Misconduct*

Under step one of our analysis, we find that Respondent Boles did engage in judicial misconduct. This Court is sensitive to the argument that a judge should not be subject to discipline for mere error in judgment in the context of a case. Indeed, such matters are correctable in the appellate process. In this case, however, there can be no doubt that the facts outlined above clearly demonstrate that Respondent has engaged in willful misconduct in office, conduct prejudicial to the administration of justice, and conduct violating Canons 2, 3, and 7 of the Code of Judicial Conduct, as charged.

With regard to Count I, Respondent had no statutory right to require that a juvenile or his parents pay pauper attorney fees under the juvenile statute unless the juvenile was found to be delinquent. *Woolf v. State, supra.* Even if the parents could have been ordered to pay the legal fees in the juvenile case, Respondent was required, under the statute and pursuant to minimal due process standards, to afford them a hearing to fairly determine their ability to pay. Simply declaring *ex parte* that the parents could afford to pay the fees was improper. In addition, Respondent did not have any legal basis to order that the salaried public defender in criminal cases be allowed additional attorney fees to be paid by the juvenile. If the public defender was paid a salary by the County, then any money that might be owed after a fair hearing on a defendant's ability to pay would be owed to the County and not to the public defender. If the public defender's salary needs to be raised, that is a matter for Respondent and the County Council to resolve through normal appropriation chan-

nels. Boles violated his duty under Canon 2 of the Code of Judicial Conduct to respect and follow the law. Respondent Boles clearly understood the correct interpretation of I.C. 31-6-4-18 offered by Pierce, the Prosecutor and the Indiana Judicial Center, yet he chose to ignore and defy the law. Such conduct is not appropriate because it destroys the public's confidence in the integrity and impartiality of the judiciary.

These actions were compounded by Respondent's clear efforts at retaliation for what he perceived as a challenge to his authority. To vacate his erroneous attorney fee order, to improperly deny Gundlach any attorney fees, and then to wrongfully accuse Gundlach of attempting to cheat the taxpayers of Hendricks County, was an abuse of judicial power. Such misconduct on the part of Respondent violates Canon 3 of the Code of Judicial Conduct which requires, among other things, that a Judge be unswayed by partisan interests, public clamor or fear of criticism. A judge should not pander to public sentiment. In addition, a judge is required to be patient, dignified and courteous to litigants, witnesses and lawyers. Moreover, Canon 7 requires that judges refrain from political activity inappropriate to the judicial office.

However troublesome the conduct of Pierce and Hinkle was to Respondent, he was required to act with circumspection and not employ his judicial office as a vehicle to resolve personal disputes. Judges are held to a higher standard of conduct. *In Re Terry* (1975), 262 Ind. 667, 323 N.E.2d 192. It is clear that Respondent became completely embroiled in this matter and lost all semblance of impartiality, independence, dignity and distance from public clamor. Boles misused the power of his public office, displayed a lack of judicial temperament, and engaged in improper political activity in his crusade to portray himself as a "taxpayers' hero." Respondent's improper order vacating all attorney fees in favor of Gundlach was a clear act of retaliation for having his erroneous pauper attorney fee awards questioned. When the juvenile's father filed an action before the Judicial Qualifications Commission, Respondent Boles again retaliated by ordering Gundlach to reject or ratify the conduct of Pierce and Hinkle, which order necessitated this Court's issuance of a Permanent Writ of Prohibition.

■ The use of judicial power as an instrument of retaliation is a serious violation of the Code of Judicial Conduct. *Matter of Seraphim* (1980), 97 Wis.2d 485, 294 N.W.2d 485. Respondent's misconduct in this regard was compounded by the fact that his order to Gundlach directed Gundlach to ratify or reject the filing of a judicial discipline complaint by the juvenile's father. We view Respondent's order as an impermissible attempt to interdict the Commission's lawful authority. We also note that a judge must avoid the appearance that he is using the power of the office to promote his candidacy. *Opinions of Committee on Professional Ethics and Grievances*, American Bar Association, 1957, Opinion 139, page 29. Such conduct is evident in Boles' repeated assertion in orders of the court that he was the representative of Hendricks County taxpayers against the greed of Gundlach, Pierce and Hinkle. Respondent's tactic of making personal attacks on individuals as a means of gaining favor with the electorate is highly unethical.

With regard to Count II, we find that Respondent Boles' conduct in his ongoing political dispute with the County Commissioners did not avoid the appearance of impropriety as required by Canon 2. In addition, the posters, the calendar advertisement, the letters to the Commissioners and the filing of the *Lis Pendens* notice showed a lack of impartiality and inappropriate political activity in violation of Canons 3 and 7. Respondent's repeated assaults on the County Commissioners for violations of the Open Door Law by not having an agenda falsely stated the law and Respondent knew it. I.C. 5-14-1.5-4 (A governing body of a public agency utilizing an agenda shall post a copy of the agenda at the entrance to the location of the meeting prior to the meeting).

Judges are certainly entitled to political views. However, judges must maintain an impartial stance and decide cases based on the law. To become embroiled in a political dispute and to purport to lead a campaign against other public officials as the Judge of the Hendricks Circuit Court is a breach of the duty to be impartial. If a taxpayer had brought an Open Door lawsuit before the Hendricks Circuit Court, Respondent would have had no choice but to disqualify himself due to his publicly proclaimed partiality.

To reiterate, the foregoing facts demonstrate that Respondent Boles is guilty of willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

## E. *Sanction*

Having found misconduct in step one of our analysis, we must now determine whether the sanction proposed by the Commission and the Respondent is appropriate in order to decide whether to accept the Conditional Agreement for Discipline as tendered. In making the determination as to whether the proposed sanction is appropriate, we must take into consideration any aggravating and mitigating information which is before this Court.

Aggravating information exists which demonstrates that the type of misconduct found under the two present counts is no mere aberration. The following examples of incidents which constitute the aggravating information before this Court contain improper statements and actions similar to those found in the two charges of this case:

1. In *State of Indiana v. Strange,* Respondent Boles ordered a person convicted of murder released on probation even though Indiana law prohibits granting probation to convicted murderers. An original action brought by the State of Indiana was required to keep Respondent Boles within his lawful jurisdiction and also to preclude a violation of the executive's authority over clemency.

2. In a recent sentencing of a person convicted of killing three people while driving under the influence of alcohol, Respondent made the injudicious comment: "Were it up to me personally, I would shoot you.... Were it up to me, were I an outlaw, were I not bound by the law, right today we'd have an execution in this Courtroom...."

3. In 1983, a charge was made before the Qualifications Commission that Respondent wrongfully withheld attorney fees in connection with the case of *State v. Lowery.* While the Commission decided not to charge Respondent with misconduct in that case, we note that Respondent's actions there were alarmingly similar to his actions in the Gundlach matter. In addition, Respondent was directed to desist in his use of offensive language in relationships with other public officials.

4. In 1988, the Commission opened an investigation against Respondent in connection with letters to the Supreme Court Administrator and the State Court Administrator. The letters are rambling diatribes against this Court and its administrators, with specific attack on the original action process and this Court's requirement that trial courts file statistical reports. A statement in the letter to Bruce A. Kotzan, the State Court Administrator, is indicative of the nature of these letters.

"Bruce, you'll be impressed that I have been asked to return to speak at the Danville Public Library's 'Scream in the Park' Halloween Story Telling for younger children. I am looking forward to selecting a new horror story to tell the Library patrons. I may begin with your statistical report or talk about Carl (sic) Mulvaney's voracious appetite for taking jury trials away from the citizens of Hendricks County and mandating me off cases."

5. In *State ex rel. Garcia v. The Hendricks Circuit Court,* Respondent signed a minute entry as "Judge

Jeffrey DeFacto" and characterized an order of this Court as "gratuitous speculation."

6. In response to a February 1989 Notice of Investigation by the Commission, Respondent filed a vituperous answer declaring himself incredulous that the Commission would even consider an investigation based upon information filed with the Commission by such a "low life" individual.

7. In the case of *Mann v. Liquid Transport Corp.*, Respondent made an entry denying a timely automatic change of judge motion for the stated reason that it "would only cost the taxpayers further money." A Writ of Mandamus was granted by this Court ordering Respondent to follow the law and grant the change of judge.

8. On April 6, 1988, Judge Allen Sharp of the United States District Court for the Northern District of Indiana issued a Stay in the case of *Resnover v. Duckworth* during the pendency of a Petition for Writ of Habeas Corpus. Nevertheless, during the pendency of the federal court action, Respondent set a new execution date. Counsel from Resnover's state action filed a motion for Respondent to rescind the execution date due to the federal court's superseding jurisdiction. Respondent denied the motion. By letter, the State of Indiana correctly advised the Warden of the State Prison that Respondent's order of execution was superseded by the federal court order. Boles responded by issuing another order declaring the execution date "to remain in effect." Counsel were ordered to expedite the federal proceedings and to report to him on their progress. Resnover's federal habeas corpus counsel renewed his request for a stay in the federal court due to Respondent's refusal to stay the execution. In his next order, Respondent continued to order the attorneys to expedite the federal action and to not "footnote federal pleadings with meritless trivia." Thereafter, and again while the federal action was still pending, Respondent entered an order that all counsel appear for a hearing, including Resnover's federal counsel who had never entered an appearance in the State court action. This Court was required to issue an Emergency Writ of Prohibition and the United States District Court for the Northern District of Indiana was required to issue a stay of Respondent's order which required the federal counsel to appear in State court.

9. In 1987, in *State of Indiana v. Lawrence*, Respondent disqualified himself from a case where he was special judge. His stated reasons were that the regular judge never thanked him for the numerous cases he had handled as a special judge and the regular judge had allegedly encouraged attorneys to sue him.

10. In a recent case styled *In Re the Marriage of Johnson*, decided by Respondent while this disciplinary proceeding was pending, he made a personal attack on a member of the Indiana Court of Appeals. He repeatedly declared that the Judge was incorrect or had "incorrectly" decided the case of *In Re: The Marriage of Davidson*, (1989) Ind.App., 540 N.E.2d 641, and that the decision "ignores Indiana precedent ... and is clearly a minority view, not worthy of being followed."

Information before this Court in mitigation shows that Respondent Boles has an extensive record of community service and activity. Likewise, his efforts as an educator are well documented. In addition, the charges in this case do not involve allegations of dishonesty or criminal conduct. With regard to the second charge, we note that the County Attorney submitted an affidavit which supported Respondent's contention that the County Commissioners had violated the Open Door

Law in connection with the real estate purchase agreement. Also, after the County Commissioners vacated their purchase agreement Respondent immediately released his *Lis Pendens* notice.

The most important mitigating factor in this case, however, is the fact that Respondent Boles has acknowledged his misconduct and has tendered a letter of apology to the Commission recognizing that his actions in the present case were "prejudicial to the administration of justice and were intemperate and undignified so as to impair the necessary appearance of impartiality which is essential to the Court." Attachment A.[1] But for this apology and the recognition that the charged conduct was wholly inappropriate, we would be inclined to give greater weight to the aggravating factors and accept the Commission's original recommendation to impose up to a six month suspension from office without pay.

The obligation of a judicial officer is to uphold and apply the laws, not to defy them, and not to enact them. The judiciary is no place for one who wishes to take the law into his own hands. The making and changing of public policy, no matter how well-intentioned, is primarily a legislative, not a judicial function.

The Respondent has injudiciously attacked a variety of litigants, attorneys, and public officials, often without legal or moral justification. He is a bright, energetic, intense, aggressive, and often intimidating advocate who is both blessed and cursed with an advanced case of self-righteousness. This combination of characteristics can often serve substantial public good when effectively wielded by a person in other roles. Rarely if ever is it appropriate for judicial officers whom society empowers and trusts to consider all sides in resolving private disagreements; to dispassionately balance individual rights and so-

cietal protection; and to dispense fair, considerate, and even-handed justice. Judicial arrogance impairs rather than enhances public confidence in our legal/judicial system. It is his assurance that he will avoid judicial arrogance in the future that enables us to consider allowing Respondent to return to the bench following the recommended period of suspension. Any future instances of judicial misconduct on the part of Respondent will be dealt with more severely.

The decision on the two charges in this case does not foreclose the Commission's consideration of unreported instances of misconduct, if any. Citizens who, in good faith, file complaints with the Judicial Qualifications Commission perform a necessary and useful function. Because judges are entrusted with and wield great power, it is understandable that individuals who contemplate reporting judicial misconduct to the Commission do so with some trepidation, particularly when the questioned behavior involves abuse of judicial power. Citizens aware of judicial misconduct may file complaints with the Commission secure in the fact that the complaint is confidential until such time as the Commission, following its own inquiry, decides to charge misconduct.

It is only because Respondent Boles has made this apology and has recognized his misconduct that we now accept the Statement of Circumstances and Conditional Agreement for Discipline.

We find the conduct charged involves judicial misconduct for which a sixty day suspension without pay is appropriate.

In light of the foregoing acceptance of the Statement of Circumstances and Conditional Agreement for Discipline, this Court now SUSPENDS the Respondent, Jeffrey V. Boles, from the office of Judge of the

---

1. After the Commission filed its Recommendation for Discipline with this Court recommending a suspension from office of three to six months, Respondent approached the Commission with the letter of apology and recognition of misconduct which is attached to this opinion. Respondent requested that the Commission withdraw its Recommendation for Discipline stating he would be willing to accept a repri-

mand or a suspension limited to thirty (30) days. The Commission rejected Respondent's proposal, but subsequently agreed with Respondent to propose a sixty day suspension without pay. This was the proposal made to this Court in the Statement of Circumstances and Conditional Agreement for Discipline signed by Respondent, his counsel and counsel for the Commission.

Hendricks Circuit Court, without pay, for a period of sixty days to commence on July 9, 1990. In addition, the Respondent shall be suspended from the practice of law during the period of judicial suspension in accordance with Admission and Discipline Rule 25(III)(C). Assuming that Respondent Boles does not violate this suspension order, he shall automatically resume office as Judge of the Hendricks Circuit Court on September 8, 1990.

Attorney Richard J. Wood, is hereby appointed to serve as Judge Pro Tempore of the Hendricks Circuit Court during the period of Respondent's suspension.

PIVARNIK, J., dissents with separate opinion in which GIVAN, J., concurs.

ATTACHMENT A

Jeffrey V. Boles

Danville, Indiana

June 6, 1990

Dear Commissioners:

While no judge can prevent a complaint being made against him or her, it has always been my hope that any claim against me would be without substance. When the current two charges were presented to me, I sincerely believed that they were without substance and responded consistent with that belief. My focus at that time was on the purpose behind my rulings rather than the proceduress of how I arrived at them. Having taken the opportunity to reflect on these matters, I now recognize that there is a legitimate basis for concern over the actions I took. In taking these actions, it was my desire to force the County Commissioners to comply with the Open Door Act and to direct a parent, capable of paying, rather than the taxpayers, to pay the attorney's fees for his own son. However, after thoughtful considerations and after discussing the matters with my wife, children, and counsel, I recognize that even though my actions did not stem from improper motives, they were nevertheless prejudicial to the administration of justice and were intemperate and undignified so as to impair the necessary appearance of impartiality which is essential to the Court.

It is my desire to avoid further controversy and the unnecessary expenditure of the Commission's and Supreme Court's valuable time by being willing to accept appropriate discipline. One of my responsibilities as a judge is to administer justice, and in keeping with this responsibility, I must be prepared to accept appropriate discipline myself. I regret these incidents occurred, and out of respect for the Bench, the Bar, and the profession as a whole, I am prepared to accept and consent to a sanction of a private or public reprimand. While I would hope that the Commission could withdraw its present recommendations in favor of a reprimand only, I would be willing to immediately serve a suspension with or without pay if the suspension could be limited to thirty days or less. I thank you in advance for your consideration of my proposal.

Sincerely and respectfully,

/s/ Jeffrey V. Boles
Jeffrey V. Boles

PIVARNIK, Justice, dissenting.

I respectfully dissent to the opinion of the majority accepting the terms of the conditional agreement for discipline submitted by the Judicial Qualifications Commission and Judge Boles, which results in his suspension from office for a period of two months without pay, because I find such sanction to be inappropriately lenient.

It is apparent from the facts agreed to by all parties involved that the Respondent refuses to conform his conduct to that appropriate for judicial office. It would be my vote that he be removed from office.

GIVAN, J., concurs.