In the Matter of James **FUNKE, Jr., Judge of the Jennings Superior Court.**

No. 40S00–0102–JD–136.

Court of Appeals of Indiana.

Sept. 27, 2001.

Daniel P. Byron, Indianapolis, IN, for the respondent.

---

Meg Babcock, Counsel to the Commission, Indianapolis, IN, for the Indiana Commission on Judicial Qualifications.

## JUDICIAL DISCIPLINARY ACTION

### PER CURIAM.

This matter comes before the Court as a result of a judicial disciplinary action filed by the Indiana Commission on Judicial Qualifications ("Commission") against the respondent, James Funke, Jr., Judge of the Jennings Superior Court. Pursuant to Indiana Admission and Discipline Rule 25(VIII)(H), the respondent and Commission jointly submitted a "Statement of Circumstances and Conditional Agreement for Discipline," which the Court approved by written order dated August 13, 2001.

Article 7 Section 4 of the Indiana Constitution and Indiana Admission and Discipline Rule 25 give the Court original jurisdiction over this matter.

### Background

The parties stipulated to the following background information and facts. Jennings Northwest Regional Utilities ("JNRU") is a regional water and sewage district established by the Department of Environmental Management for the purpose of expanding and installing sewer lines in Jennings County. JNRU's expansion of sewer lines in a rural area of the county designated "Phase 1" generated significant local controversy concerning, in part, JNRU's plan to force sewage connections and impose what a number of citizens believed were onerous rates and charges. In July 1999, the Jennings County Board of Commissioners withdrew support for JNRU and replaced five JNRU board members. One of the new board members was the respondent's first cousin. The original JNRU board then filed a lawsuit against the Jennings County Board of Commissioners and other defendants, including respondent's first cousin, alleging the new JNRU board members were illegally installed. The respondent's parents, aunt and first cousin live in Phase 1.

In October 1999, the respondent's father filed a petition for emergency protective order to enjoin JNRU from running its equipment through his property. Pursuant to a local rule, all such emergency petitions were filed in the respondent's court. As was the practice then with most protective order filings in the Jennings Superior Court, an employee of the clerk's office affixed a stamp of the respondent's signature to a protective order at the time the petition was filed and before review by the respondent. JNRU therefore received a protective order in favor of the respondent's father that appeared to have been issued by the respondent. Later that day, upon learning of the order, the respondent transferred his father's protective order petition to the judge of the Circuit Court, who granted it and issued a separate order.

In November and December 1999 and January 2000, after the Phase 1 construction began, several citizens who were opposed to installation of sewage lines and expressed concern about imminent damage to their property, filed for temporary protective orders against JNRU. The respondent granted the petitioners temporary protective orders and in most cases then disqualified himself. However, in several cases filed *pro se* in which he had disqualified himself, and in one case in which he had granted an automatic change of judge, the respondent thereafter *sua sponte* issued "Orders of Clarification," which extended the effectiveness of the emergency protective orders against JNRU. In another case, the respondent ordered JNRU to remove a trencher from the petitioner's property after having disqualified himself. Also in January 2000, the respondent issued protective orders in new cases filed by two petitioners whose 1999 protective

orders had expired. The 1999 protective order cases had already been transferred to a special judge who had declined to extend the 1999 orders.

The Commission brought a multiple count complaint against the respondent. We appointed masters to hear and take evidence pursuant to Indiana Admission and Discipline Rule 25 (VIII)(I), but before the case went to trial, the parties tendered a proposed settlement agreement. The parties have stipulated and we agree that the respondent's conduct violated the Indiana Code of Judicial Conduct as follows.

### Count I

The respondent permitted a practice in his court and in the clerk's office from 1997 through early 2000 whereby the clerk or her employees, with the respondent's knowledge, affixed the respondent's signature stamp to protective orders when petitions were filed and before the respondent reviewed the petitions. This practice led to the appearance that respondent granted his own father a protective order. In permitting this practice, the respondent violated Canon 1 of the Code of Judicial Conduct, which requires judges to uphold the integrity and independence of the judiciary; Canon 2A, which requires judges to respect and comply with the law and to act at all times in a manner promoting the public confidence in the integrity and impartiality of the judiciary; Canons 3 and 3A, which require a judge to diligently perform judicial duties; and Canon 3C(1), which requires judges to diligently discharge administrative responsibilities and to maintain professional competence in judicial administration. The respondent also committed conduct prejudicial to the administration of justice.

### Counts II and VI

The respondent granted several citizens emergency protective orders against JNRU despite the property interests of his parents, aunt and first cousin in the Phase 1 district, his father's protective order against JNRU, and his first cousin's appointment to the JNRU board, the legality of which JNRU had challenged. The respondent thereby violated Canon 1 of the Code of Judicial Conduct, which requires judges to uphold the integrity and independence of the judiciary; Canon 2A, which requires judges to respect and comply with the law and to act at all times in a manner promoting the public confidence in the integrity and impartiality of the judiciary; Canon 2B, which forbids judges from allowing family, social, political or other relationships to influence the judge's judicial conduct or judgment, and which prohibits judges from lending the prestige of the office to advance the private interests of others; Canon 3B(5), which requires judges to perform their duties without bias or prejudice; Canon 3E, which requires judges to disqualify themselves when their impartiality might reasonably be questioned; and Canon 3E(1)(a), which requires judges to disqualify themselves when they have a personal bias or prejudice concerning a party or a party's lawyer. The respondent also committed conduct prejudicial to the administration of justice.

### Counts III and IV

After granting an automatic change of judge in one case and disqualifying himself in several other cases, the respondent then *sua sponte* issued "Orders of Clarification" in which he extended the effectiveness of the emergency protective orders against JNRU. In another case, after having disqualified himself, the respondent issued an order requiring JNRU to remove a trencher from the petitioner's property. The respondent's conduct violated Canon 1 of the Code of Judicial Conduct, which requires judges to uphold the integrity and independence of the judiciary; Canon 2A, which requires judges to respect and com-

ply with the law and to act at all times in a manner promoting the public confidence in the integrity and impartiality of the judiciary; Canon 2B, which forbids judges from allowing family, social, political or other relationships to influence the judge's judicial conduct or judgment, and which prohibits judges from lending the prestige of the office to advance the private interests of others; Canon 3B(2), which requires judges to be faithful to the law and to maintain professional competence in it; Canon 3B(5), which requires judges to perform their duties without bias or prejudice; Canon 3C(1), which requires judges to diligently discharge the judge's administrative duties without bias or prejudice and to maintain professional competence in judicial administration; and Canons 3E and 3E(1)(a), which again required the judge's disqualification in light of the property interests of his parents, aunt and first cousin in Phase I, his father's protective order against JNRU, and his first cousin's appointment to the JNRU board, the legality of which JNRU had challenged. The respondent also committed conduct prejudicial to the administration of justice.

## Count V

Further, in *sua sponte* issuing the "Orders of Clarification" extending the effectiveness of the protective orders where no pleadings or petitions requesting that relief were filed, the respondent violated Canon 1 of the Code of Judicial Conduct, which requires judges to uphold the integrity and independence of the judiciary; Canon 2A, which requires judges to respect and comply with the law and to act at all times in a manner promoting the public confidence in the integrity and impartiality of the judiciary; Canon 2B, which forbids judges from allowing family, social, political or other relationships to influence the judge's judicial conduct or judgment, and which prohibits judges from lending the prestige of the office to advance the private interests of others; Can-

on 3B(2), which requires judges to be faithful to the law and to maintain professional competence in it; Canon 3B(5), which requires judges to perform their judicial duties without bias or prejudice; Canon 3B(9), which requires judges to dispose of all matters fairly; Canon 3C(1), which requires judges to diligently discharge their administrative responsibilities without bias or prejudice and to maintain professional competence in judicial administration; and Canons 3E and 3E(1)(a), which required the judge's disqualification in light of the property interests of his parents, aunt and first cousin in the Phase I district, his father's protective order against JNRU, and his first cousin's appointment to the JNRU board, the legality of which JNRU had challenged. The respondent also committed conduct prejudicial to the administration of justice.

## Count VII

When in January 2000 the respondent granted new protective orders for two petitioners whose 1999 protective orders had expired, he should have known that a special judge had assumed jurisdiction of the 1999 protective order cases and had indicated he would not extend the effectiveness of the 1999 orders. In granting the new protective orders, the respondent interfered with the exercise of judicial authority by another judge and assisted the petitioners in an attempt to seek out a more favorable forum. The respondent thereby violated Canon 1 of the Code of Judicial Conduct, which requires judges to uphold the integrity and independence of the judiciary; Canon 2A, which requires judges to respect and comply with the law and to act at all times in a manner promoting the public confidence in the integrity and impartiality of the judiciary; Canon 2B, which forbids judges from allowing family, social, political or other relationships to influence the judge's judicial conduct or judgment, and which prohibits

judges from lending the prestige of the office to advance the private interests of others; Canon 3B(2), which requires judges to be faithful to the law and to maintain professional competence in it; Canon 3B(5), which requires judges to perform their duties without bias or prejudice; and Canon 3C(1), which requires judges to diligently discharge the judge's administrative duties without bias or prejudice and to maintain professional competence in judicial administration. The respondent also committed conduct prejudicial to the administration of justice.

### Conclusion

The parties have agreed, as does the Court, that an appropriate sanction for respondent's misconduct is the suspension from judicial office without pay for a period of fifteen days, to be served from October 20, 2001 through November 3, 2001.

Costs of this proceeding are assessed against the respondent.

All Justices concur.