



FILED

Jun 04 2019, 11:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-JD-52

## In the Matter of the Honorable Robert W. Freese, Judge of the Hendricks Superior Court 1,

*Respondent.*

Decided: June 4, 2019

Judicial Discipline Action

**Per Curiam Opinion**

All Justices concur.

**Per Curiam.**

We find that Respondent, the Honorable Robert W. Freese, Judge of the Hendricks Superior Court 1, engaged in judicial misconduct by appointing an unqualified friend as trustee of a trust and personal representative of a related estate, failing to disclose the friendship or a financial relationship with the friend, and failing to act promptly when faced with mounting evidence of the friend's mismanagement and embezzlement of the funds entrusted to him.

The matter is before us on the Indiana Commission on Judicial Qualifications' ("Commission's") "Notice of the Institution of Formal Proceedings and Statement of Charges" against Judge Freese. After the filing of formal charges, the parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to the following facts.

## Stipulated Facts

Judge Freese has been judge of Hendricks Superior Court 1 since 2001, presiding over a docket that includes trust and estate cases. He has known Stephen Scott since about 1990, having worked with Scott in the county prosecutor's office, where Scott supervised Adult Protective Services. (Scott had also been a sheriff's deputy at the county jail.) Judge Freese lunched regularly with Scott and considered him one of his closest friends.

In 2004, Scott needed $122,400 to buy a home but had poor credit after a bankruptcy. Judge Freese used his line of credit to lend Scott the funds. On January 13, 2005, they executed and recorded a mortgage in that amount, and Scott gave the Judge a promissory note.

Seventeen days later, Judge Freese appointed Scott as trustee over the Herbert Hochreiter Living Trust in *Trust of Herbert Hochreiter*, No. 32D01-9710-TR-000003. None of the parties objected, but the Judge never disclosed his financial arrangement with Scott.

Later in 2005, Herbert Hochreiter died, and an estate was opened with an estimated $2.3 million in real and personal property. Judge Freese took the

matter under advisement after a hearing, and on October 24 appointed Scott as personal representative of the Estate. As before, none of the parties objected, nor did the Judge disclose his financial arrangement with Scott.

As trustee, Scott was required to provide an annual accounting of trust property, including all receipts and disbursements. Indiana Code § 30-4-5-12(a). Moreover, the court was permitted "either on petition or **on its own motion**" to "require the trustee to submit such proof as it deems necessary to support the trustee's verified written statement of accounts." I.C. § 30-4-5-13(b) (emphasis added). And though the Trust was created as an unsupervised trust, its terms specifically required annual reporting and accounting. Yet from 2006 through November 2009, Scott provided no annual accounting of Trust assets.

Similarly, Scott as personal representative of the Estate was required to file a verified account of administration "upon filing a petition for final settlement," "upon the revocation of his letters," "upon his application to resign and before his resignation is accepted by the court," and "at any other time when directed by the court either **of its own motion** or on the application of any interested person." I.C. § 29-1-16-3 (emphasis added).

On June 12, 2007, when the Estate had been pending for nearly two years, Judge Freese advised Scott a final report and accounting was due. Scott requested a 180-day extension (which the Judge granted) but still did not file a final report and accounting. Continuing through 2009, Scott repeatedly disregarded the Judge's directives to file accountings in the Trust and Estate cases.

In December 2009, Scott filed a partial, defective Trust accounting; and through newly-hired counsel, he sought an extension to January 29, 2010. The Judge granted the extension over objection of one of the beneficiaries, who was concerned that certain gold bars might be missing from the Trust and that Scott had disregarded accounting requirements from the outset.

In January 2010, Scott asked to withdraw as trustee and have the court appoint a successor trustee. The beneficiaries objected to Scott resigning without submitting a complete accounting and filing tax returns and other appropriate legal documents. Judge Freese gave Scott 30 days to respond to the objection, but Scott relocated to Florida and never responded.

The beneficiaries ultimately agreed to allow Scott's counsel to serve as successor trustee and personal representative, and counsel agreed to share information from his files and from an accounting firm to complete an accounting within 60 days. The Estate had been open nearly five years when Judge Freese signed that order in August 2010.

From then through July 2012, the Judge had multiple indications of Scott's poor performance: Summonses sent to Scott were returned to sender. Scott's counsel requested the court's guidance and intervention, reporting that Scott was unresponsive and that the Trust checking account contained only $8.27 and its savings account had been closed for over 6 months—when counsel estimated it should have $50,000 to $60,000 in cash. And one of the beneficiaries filed a detailed objection and multiple rules to show cause or contempt citations against Scott. Judge Freese "took no action or minimal action" on those reports. But while the cases were pending and Scott was living in Florida, he left Scott a phone message stating he was concerned that Scott was behaving bizarrely, and that he "would never have thought [Scott] would have stolen anything."

On July 31, 2012, when the cases had been pending nearly seven years, Judge Freese ordered Scott to appear in person and bring all financial records to a September show-cause hearing. The hearing was later rescheduled to November, but Scott failed to appear, and Judge Freese found him in contempt and found he had permitted substantial amounts of money to be removed from the Trust for non-Trust purposes.

In January 2013, after a damages hearing, the Judge entered judgment against Scott for nearly $580,000, finding:

- Between September 2007 and August 2011, there were disbursements totaling $140,550 from Trust accounts to Scott's personal accounts, plus another $101,217 in wire transfers or cash withdrawals not corresponding to legitimate disbursements;
- In January 2010, $16,800 was transferred from Estate accounts to Scott's personal account; and the Estate's remaining bank balance of $6,517.08 was taken by unexplained cash withdrawal;

- The amounts directed to Scott's accounts should be trebled as punitive damages (to $421,650 and $50,400, respectively)—for a total judgment, including the remaining un-trebled sums, of $579,784.08.

Judge Freese never referred those findings to the local prosecutor or to the United States Attorney. But Scott pleaded guilty in 2017 to federal charges stemming from his embezzlement, which took place from August 2007 through July 2011. The stolen funds remain unrecovered.

# Discussion

The Commission charges, and Judge Freese agrees, that his conduct violated four provisions of the Code of Judicial Conduct:

- Rule 1.2, requiring judges to avoid impropriety and act at all times in a manner promoting public confidence in the judiciary's integrity;
- Rule 2.4(B), prohibiting judges from allowing (as relevant here) social relationships to influence the judge's judicial conduct or judgment;
- Rule 2.5(A), requiring judges to perform judicial and administrative duties competently, diligently, and promptly; and
- Rule 2.13(A)(1), requiring judges (in relevant part) to exercise the power of appointment impartially and on the basis of merit.

As mitigators, the parties' agreement identifies the Judge's lengthy and distinguished judicial career, active leadership in judicial, legal, and civil-service organizations, lack of prior disciplinary history, cooperation with this investigation, and remorse. They also agree his misconduct was not deliberate or willful and brought him no financial benefit or personal gain, and that the Judge relied on the attorneys to file pleadings in the Trust because it was unsupervised. But the Judge also acknowledges I.C. § 30-4-5-13(b) allowed him to act on his own motion, and that in retrospect he should have acted sooner given the information available to him.

Citing no aggravators, the parties agree that an appropriate sanction is a 45-day suspension without pay, plus assessing costs of this proceeding against Judge Freese. "A suspension from office without pay, regardless of duration, . . . is a significant blemish on a sitting judge's reputation." *In re Hawkins*, 902 N.E.2d 231, 246 (Ind. 2009). And "a suspension without pay

for more than a few weeks in most cases will be tantamount to a forced resignation." *Id.*, 902 N.E.2d at 249 (Boehm, J., dissenting). A 45-day suspension, then, is a very severe sanction. But we agree it is appropriate here.

Unlike typical violations of Rule 2.4(B), the Judge's misconduct was mostly negligent, not willful. *See, e.g.*, *In re Johanningsmeier*, 103 N.E.3d 633 (Ind. 2018) (failing to recuse from, and improperly intervening in, a close friend's traffic infraction case, even after a prior caution); *In re Van Rider*, 715 N.E.2d 402 (Ind. 1999) (failing to recuse from son's criminal case, instead ordering him released from jail on his own recognizance). And it involves one case, while most Rule 2.5(A) violations stem from systemic neglect. *See, e.g.*, *In re Brown*, 4 N.E.2d 619 (Ind. 2014) (failing to complete necessary paperwork, making court files difficult to locate); *In re Kouros*, 816 N.E.2d 21 (Ind. 2004) (failing to promptly issue orders in criminal cases despite this Court's prior remedial orders aimed at those ongoing failures).

But the Judge's misconduct ultimately enabled a massive theft. First, appointing Scott violated Rule 2.13(A)(1)'s duty to make "appointments . . . impartially and on the basis of merit"—he lacked fiduciary experience and had been bankrupt recently enough to have poor credit. Subjectively, the Judge trusted Scott, as his loan shows. But objectively, Scott was utterly unqualified to be entrusted with a third party's money; appointing him seems to have been driven by friendship, not merit. Then, that friendship clouded the Judge's objectivity through seven years of warning signs— making him unreasonably credulous of, and lenient towards, Scott in the face of growing evidence of serious financial misconduct. If not for the Judge's inaction, Scott's theft likely could have been largely prevented.

Our precedent illustrates that suspensions longer than 30 days reflect extremely serious judicial misconduct, just shy of what might warrant removal from office. For instance, we accepted a Conditional Agreement for a 60-day unpaid suspension when a judge wrongfully accused an attorney of attempting to cheat taxpayers in response to a perceived challenge to an improper, *ex parte* attorney-fee award, and became embroiled in a public political campaign against the county council. *In re Boles*, 555 N.E.2d 1284, 1285–87 (Ind. 1990). Three Justices detailed the

judge's long-running pattern of blatantly injudicious behavior, but found his community involvement, lack of dishonesty, and eventual apology were mitigating. *Id.* at 1289–91. But two Justices dissented and would have removed the judge from office. *Id.* at 1292 (Pivarnik and Givan, JJ., dissenting).

More recently, a judge repeatedly delayed post-conviction cases by failing to organize the files or review his commissioner's orders—in one instance, prolonging a prisoner's incarceration by nearly two years. *Hawkins*, 902 N.E.2d at 241, 247. After balancing the serious harm caused against the judge's "outstanding reputation . . . for fairness, honesty, and integrity," commitment of service to courts and his community including as public defender, remorse, and implementation of remedial measures (and that his commissioner was primarily at fault), we rejected the Special Masters' recommendation of removal from office. *Id.* at 243–44. But while a majority of the Court imposed a 60-day suspension, *id.*, two Justices would have imposed a one-year suspension. *Id.* at 247–48 (Shepard, C.J., dissenting), 248–49 (Sullivan, J., dissenting).

Two other cases in which we accepted Conditional Agreements illustrate the gravity of even a 30-day unpaid suspension. The judge in *In re Cox* had a long-running, express policy of giving longer sentences to defendants who had jury trials instead of bench trials or pleading guilty—and sentenced one defendant without disclosing his criticism of her in a disciplinary action she had brought against her former attorney. 680 N.E.2d 528, 529–30 (Ind. 1997). And the judge in *In re Young* routinely misinformed traffic defendants about the State's burden of proof and penalized those who went to trial more harshly as a deterrent to others—and in one instance refused to let a defendant accept a plea agreement and plead guilty. 943 N.E.2d 1276, 1277–80 (Ind. 2011).

The parties here have agreed to a 45-day suspension—squarely between the above guideposts. "The purpose of judicial discipline is not primarily to punish a judge, but rather to preserve the integrity of and public confidence in the judicial system and, when necessary, safeguard the bench and public from those who are unfit." *Hawkins*, 902 N.E.2d at 244 (Ind. 2009). The sanction must be designed to deter similar

misconduct and assure the public that judicial misconduct will not be condoned. *Id*. As the above cases illustrate, a 45-day suspension from office without pay is a very serious sanction, but we agree it is warranted here, in view of the serious harm to the Trust and Estate that were enabled by the Judge's misconduct.

## Conclusion

The Court orders that the Respondent, Robert W. Freese, shall be suspended from the office of Judge in the Hendricks Superior Court 1 without pay for forty-five (45) days commencing at 12:01 A.M. on July 8, 2019. The suspension shall terminate and the judge shall automatically be reinstated to office at 12:01 A.M. on August 22, 2019. This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to this case. The costs of this proceeding, which the parties stipulate to be $1,460.00, are assessed against Respondent.

All Justices concur.

ATTORNEY FOR RESPONDENT
James J. Bell
Indianapolis, Indiana

ATTORNEYS FOR INDIANA COMMISSION ON JUDICIAL QUALIFICATIONS
Adrienne L. Meiring, Counsel to the Commission
Marcus McGhee, Staff Attorney to the Commission
Indianapolis, Indiana