



FILED

Nov 12 2019, 11:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case Nos. 19S-JD-386, 19S-JD-566, 19S-JD-567

## In the Matter of the Honorable Andrew Adams, Judge of the Clark Circuit Court 1,

*Respondent.*

---

## In the Matter of the Honorable Bradley B. Jacobs, Judge of the Clark Circuit Court 2,

*Respondent.*

---

## In the Matter of the Honorable Sabrina R. Bell, Judge of the Crawford Circuit Court,

*Respondent.*

---

Decided: November 12, 2019

Judicial Discipline Actions

---

**Per Curiam Opinion**

All Justices concur.

**Per Curiam.**

We find the Respondents—the Honorable Andrew Adams, Judge of the Clark Circuit Court 1, the Honorable Bradley B. Jacobs, Judge of the Clark Circuit Court 2, and the Honorable Sabrina R. Bell, Judge of the Crawford Circuit Court—engaged in judicial misconduct by appearing in public in an intoxicated state and behaving in an injudicious manner and by becoming involved in a verbal altercation. We also find that Judge Adams and Judge Jacobs engaged in judicial misconduct by becoming involved in a physical altercation for which Judge Adams was criminally charged and convicted. Respondents' actions were not merely embarrassing on a personal level; they discredited the entire Indiana judiciary.

This matter is before us on the Indiana Commission on Judicial Qualifications' ("Commission's") "Notice[s] of the Institution of Formal Proceedings and Statement of Charges" against Respondents. After charges were filed, each Respondent separately tendered, jointly with the Commission, a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to certain facts.

Although these proceedings were filed under different case numbers, we issue a single opinion for all three cases because the misconduct charges stem from the same incident.

## Background and Stipulated Facts

Judge Adams was admitted to the Indiana Bar in 2001 and has served as the Judge of Clark Circuit Court 1 since January 1, 2015. Judge Jacobs was admitted to the Indiana Bar in 1999 and has served as the Judge of Clark Circuit Court 2 since January 1, 2015. Judge Bell was admitted to the Indiana Bar in 2011 and has served as the Judge of Crawford Circuit Court since January 1, 2017. At all times pertinent to the charges, Respondents presided over general jurisdiction dockets that included criminal and civil cases.

On the evening of April 30, 2019, Respondents traveled to Indianapolis to attend the Spring Judicial College the next day. After checking into

their hotel rooms, Respondents spent the evening socializing with other judicial officers and drinking alcoholic beverages.

At around 12:30 a.m. on May 1, Respondents and Clark Circuit Court Magistrate William Dawkins ("Magistrate Dawkins") met at a local bar, where they continued to drink alcohol. At around 3:00 a.m., the group walked to a strip club and tried to enter, but found that it was closed.

The group then walked to a nearby White Castle. While Magistrate Dawkins went inside, Respondents stood outside the restaurant. At around 3:17 a.m., Alfredo Vazquez and Brandon Kaiser drove past the group and shouted something out the window. Judge Bell extended her middle finger to Vazquez and Kaiser, who pulled into the White Castle parking lot and exited the vehicle. Judge Bell, who was intoxicated, has no memory of the incident but concedes that the security camera video shows her making this gesture.

A heated verbal altercation ensued, with all participants yelling, using profanity, and making dismissive, mocking, or insolent gestures toward the other group. At no time did Respondents move to another location in the parking lot to avoid a confrontation or de-escalate the conflict.

After a verbal exchange between Judge Bell and Vazquez, a physical confrontation ensued. At one point, Judge Jacobs had Kaiser contained on the ground. With his fist raised back, Judge Jacobs said, "Okay, okay, we're done, we're done," or "This is over. Tell me this is over," or words to that effect. At another point during the confrontation, Judge Adams kicked Kaiser in the back. The confrontation ended when Kaiser pulled out a gun, shot Judge Adams once, and shot Judge Jacobs twice.

Judge Adams and Judge Jacobs were transported to local hospitals for treatment of their serious injuries. Judge Adams, who sustained a single gunshot wound to the abdomen, had two emergency surgeries, including a colon resectioning. Judge Jacobs, who sustained two gunshot wounds to the chest, also had two emergency surgeries and was hospitalized for 14 days.

Upon admission to the hospital, Judge Adams's serum blood alcohol level was 0.213 (or approximately 0.157 using whole blood) and Judge

Jacobs's serum blood alcohol level was 0.177 (or approximately 0.13 using whole blood). Judge Bell's blood alcohol level was not tested, but she was intoxicated enough that she lacks any memory of the incident.

Judge Bell remained on the scene to speak to the police and was later taken to the police station to give a recorded statement. In her statements to the police, Judge Bell asserted that she does not remember what she said to Vazquez or Kaiser or what started the physical altercations. However, while on the scene, the media videotaped Judge Bell telling police detectives, in an excited state, "I feel like this is all my fault" or words to that effect. Judge Bell does not remember making this statement.

After being informed during her recorded statement that police detectives had video of the incident, Judge Bell remarked that

- "I'm afraid that I said something to them first, I don't know."
- "[W]e're all very good friends and they're very protective of me. And I don't know, and I'm afraid that I said something to those two strange men at first, and then they said something back to me. And then I said something and then [Judge Adams and Judge Jacobs] went to defend me."
- "I'm not denying that I said something or egged it on … because I drink … I mean I fully acknowledge that I drink and get mouthy, and I'm fiery and I'm feisty, but if I would have ever thought for a second that they were gonna fight or that that guy had a gun on him, I would never, never …"

Judge Bell later indicated that she was hypothesizing scenarios to the police about what might have happened, as she had no memory of the verbal altercation, but concedes that she made these statements.

On June 28, 2019, a special grand jury filed an indictment against Judge Adams for two counts of Level 6 felony Battery Resulting in Moderate Injury, two counts of Class A misdemeanor Battery Resulting in Bodily Injury, two counts of Class B misdemeanor Battery, and one count of Class B misdemeanor Disorderly Conduct. Judge Jacobs also was the target of a grand jury investigation in June 2019, but no criminal charges were filed against him.

On June 28, 2019, we suspended Judge Adams from the bench until further order under Indiana Admission and Discipline Rule 25(V)(A), which provides that a judicial officer shall be suspended with pay "upon the filing of an indictment or information charging the judicial officer … with a crime punishable as a felony under the laws of Indiana or the United States."

On September 9, 2019, Judge Adams pleaded guilty to Class A misdemeanor Battery Resulting in Bodily Injury. In his plea agreement, Judge Adams admitted to kicking Kaiser in a rude, insolent, or angry manner on May 1, 2019, resulting in bodily injury (pain) to Kaiser. All other charges were dismissed, and Judge Adams was sentenced to 365 days in jail, with 363 days suspended.

## Discussion

The Commission charges, and Respondents agree, that their respective conduct violated the following provisions of the Code of Judicial Conduct:

- Rule 1.2, requiring judges to act at all times in a manner that promotes public confidence in the integrity, independence, and impartiality of the judiciary; and
- Rule 3.1(C), prohibiting judges from participating in extrajudicial activities that would appear to a reasonable person to undermine the judge's integrity, independence, or impartiality.

The Commission further charges, and Judge Adams agrees, that his conduct violated Rule 1.1 of the Code of Judicial Conduct, which requires a judge to respect and comply with the law.

Our legal system "is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society." Ind. Code of Judicial Conduct, Preamble. The effectiveness of the judiciary ultimately rests on the trust and confidence that citizens confer on judges. Judges, therefore, must remain vigilant to guard against any actions that erode that public trust. Respondents' alcohol-fueled actions during the early morning hours of May 1, 2019, fell far short of the Code's directive to

"aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence." *Id.*

Respondents acknowledge that their misconduct damaged the public's respect for and confidence in the integrity of the Indiana judiciary, both within the state and nationally. Their misconduct occurred while they were in Indianapolis for a statewide judicial educational event, and Judge Adams's misconduct resulted in a criminal conviction.

The Conditional Agreements note, as mitigators, the following factors:

- Respondents have no prior disciplinary history as judges or as lawyers and this misconduct constitutes an isolated incident in their judicial careers;
- Respondents have accepted responsibility and expressed remorse for their conduct;
- Respondents have made efforts to address their behavior by contacting the Judges & Lawyers Assistance Program and by seeing counselors;
- Judge Adams and Judge Jacobs suffered serious physical injuries as a result of the altercation;
- After the physical altercation began, Judge Bell made several attempts to stop the fighting, including seeking help from those inside the White Castle by pounding on the door;
- Judge Bell immediately called 911 after shots were fired;
- Judge Adams and Judge Jacobs have been active leaders in their community; and
- Judge Adams and Judge Jacobs cooperated fully with the Commission and have been forthcoming about the incident.

"The purpose of judicial discipline is not primarily to punish a judge, but rather to preserve the integrity of and public confidence in the judicial system and, when necessary, safeguard the bench and public from those who are unfit." *In re Hawkins*, 902 N.E.2d 231, 244 (Ind. 2009). The sanction must be designed to deter similar misconduct and assure the public that judicial misconduct will not be condoned. *Id.*

The Commission and Judge Adams agree that an appropriate sanction for his misconduct is a 60-day suspension without pay. The Commission and Judge Jacobs agree that the appropriate sanction for his misconduct is a 30-day suspension without pay. The Commission and Judge Bell agree that the appropriate sanction for her misconduct is a 30-day suspension without pay.

"A suspension from office without pay, regardless of duration, is not a minor sanction. Even more than a public reprimand, any such suspension is a significant blemish on a sitting judge's reputation." *Hawkins*, 902 N.E.2d at 246. Unpaid suspensions of 30 days or longer, then, are among the most severe sanctions short of removal from office. *Id; see also Matter of Freese*, 123 N.E.3d 683, 688 (Ind. 2019) (accepting conditional agreement for a 45-day unpaid suspension of a judge who appointed his unqualified friend as trustee of a trust without disclosing his financial relationship with the friend to the parties, and did not act promptly when faced with evidence that the friend embezzled trust funds). We agree that these suspensions are warranted in light of Respondents' misconduct.

While in town to attend a statewide educational conference for judicial officers, 10 hours before the program convened, Respondents walked the streets of downtown Indianapolis in a heavily intoxicated state. When Judge Bell extended her middle finger to a passing vehicle, neither Judge Adams nor Judge Jacobs discouraged the provocation or removed themselves from the situation. Instead, all three Respondents joined in a profane verbal altercation that quickly turned into physical violence and ended in gunfire, and in doing so, gravely undermined public trust in the dignity and decency of Indiana's judiciary.

## Conclusion

The Court orders that Andrew Adams, who already is under an interim suspension, shall be suspended without pay from the office of Judge of the Clark Circuit Court 1 for sixty (60) days, effective immediately. The suspension shall terminate and the Judge shall automatically be reinstated to office at 12:01 a.m. on Monday, January 13, 2020.

The Court orders that Bradley B. Jacobs shall be suspended from the office of Judge of the Clark Circuit Court 2 without pay for thirty (30) days commencing at 12:01 a.m. on Friday, November 22, 2019. The suspension shall terminate and the Judge shall automatically be reinstated to office at 12:01 a.m. on Monday, December 23, 2019.

The Court orders that Sabrina R. Bell shall be suspended from the office of Judge of the Crawford Circuit Court without pay for thirty (30) days commencing at 12:01 a.m. on Friday, November 22, 2019. The suspension shall terminate and the Judge shall automatically be reinstated to office at 12:01 a.m. on Monday, December 23, 2019.

This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to these cases.


All Justices concur.


ATTORNEYS FOR RESPONDENT, ANDREW ADAMS
James H. Voyles
Jennifer M. Lukemeyer
Indianapolis, Indiana

ATTORNEY FOR RESPONDENT, BRADLEY B. JACOBS
Larry O. Wilder
Jeffersonville, Indiana

RESPONDENT PRO SE, SABRINA R. BELL

ATTORNEYS FOR INDIANA COMMISSION ON JUDICIAL QUALIFICATIONS
Adrienne L. Meiring, Counsel to the Commission
Marcus McGhee, Staff Attorney to the Commission
Indianapolis, Indiana