



FILED
Aug 10 2023, 4:05 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-JD-33

## In the Matter of the Honorable Jason A. Cichowicz, Judge of the St. Joseph Probate Court,

*Respondent.*

---

Decided: August 10, 2023

Judicial Discipline Action

---

**Per Curiam Opinion**

All Justices concur.

**Per curiam.**

We find that Respondent, the Honorable Jason A. Cichowicz, Judge of the St. Joseph Probate Court, engaged in judicial misconduct by continuing to serve in a fiduciary position for a non-family member after taking office, abusing the prestige of his office to benefit a family member, and failing to disclose his role as trustee of a charitable foundation from which he drew funds to further court improvement projects.

The matter is before us on the Indiana Commission on Judicial Qualifications' ("Commission's") "Notice of the Institution of Formal Proceedings and Statement of Charges" against Respondent. The parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to the following facts.

# Background and Stipulated Facts

Respondent has been Judge of the St. Joseph Probate Court since January 1, 2019. His duties as judge include overseeing the operations of the St. Joseph Probate Court Juvenile Justice Center ("JJC").

Respondent met and began representing Levering Russell Cartwright in 2013 in a marital dissolution matter. Cartwright was 73 years old at the time and had two estranged adult children. Cartwright was the beneficiary of several valuable family trusts and a self-created trust. He was also the sole trustee of the Cartwright Foundation—a 501(c)(3) charitable organization created by Cartwright's father. Cartwright had substantial financial assets and income at the time Respondent represented him.

Shortly after beginning his representation, Respondent obtained physical custody of Cartwright's personal checking account checkbook to pay Cartwright's bills upon Cartwright's request. In 2014, Respondent prepared a power of attorney, which Cartwright executed, naming Respondent as Cartwright's attorney-in-fact. The power-of-attorney allowed Respondent to buy, sell, and transfer trust property. In 2015, Respondent became co-trustee of the Cartwright Foundation. Later that

year, Cartwright resigned as co-trustee leaving Respondent as sole trustee of the foundation. Also in 2015, Cartwright, represented by independent counsel, amended his trust to provide that upon his death, the trust residue would be distributed to Respondent, who was also named as successor trustee. The trust was amended again in 2018, to provide for Respondent's family in the event Respondent did not survive Cartwright.

Even after taking office as Judge of the St. Joseph Probate Court, Respondent continued to act as Cartwright's attorney-in-fact, writing checks and paying bills on Cartwright's behalf. In February 2019, Respondent attended a meeting of the Friends of the St. Joseph County Juvenile Justice Center, a charitable organization created to raise funds for and support the JJC. At the meeting, Respondent discussed renovating space in the JJC to accommodate a new courtroom using donated funds from an undisclosed source. Only newly-elected board member Michael Misch knew of Respondent's intent to use funds from the Cartwright Foundation for the project.

In April, Respondent issued a check drawn from the Cartwright Foundation's bank account in the sum of $100,000 to Misch's law firm. The firm then issued checks amounting to $100,000 to the Friends of the JJC. Upon Respondent's recommendation, the Friends of the JJC contracted with McCollough Scholten for the project. No formal bidding process was used to procure contractor services. Neither the entirety of the Friends of the JJC Board, nor the St. Joseph County Commissioners, were advised of the source of funds for the project, or that Respondent served as sole trustee of the foundation.

Meanwhile, during the spring of 2019, Respondent asked his father, owner of R&K Ceramic Tile, LLC ("R&K"), if R&K would refurbish courthouse breakrooms used by Respondent's staff. His father agreed and funding for the project—approximately $24,800—came from the Friends of the JJC upon Respondent's direction or request. Again, no formal bidding process was used to procure the renovation services, and there are no known publicly available documents regarding the project.

In 2020, Respondent made $60,000 in foundation funds available to the Friends of the JJC for the purchase of vehicles to be used by the Court

Appointed Special Advocate program affiliated with the St. Joseph Probate Court. Respondent again wrote a check from the foundation's account to Misch's law firm, and the firm issued a check to the Friends of the JJC. The organization purchased vehicles from Victory Auto, LLC, which—like R&K—is owned by Respondent's father.

The Commission filed its "Notice of the Institution of Formal Proceedings and Statement of Charges" against Respondent on February 7, 2023. Respondent did not resign as Cartwright's attorney-in-fact until July 31, 2023, shortly after the parties tendered their conditional agreement.

## Discussion

Respondent agrees his conduct violated the following Code of Judicial Conduct provisions:

- Rule 1.2, requiring judges to avoid impropriety and act at all times in a manner promoting public confidence in the judiciary's integrity;
- Rule 1.3, prohibiting a judge from abusing the prestige of judicial office to advance the private interests of another;
- Rule 3.1(C), prohibiting a judge from engaging in extrajudicial activities that would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality; and
- Rule 3.8, prohibiting a judge from serving in a fiduciary position unless it is for the estate, trust, or person of a member of the judge's family.

The parties agree that an appropriate sanction is a 45-day suspension without pay plus an assessment of costs against Respondent. Although a suspension is a very severe sanction, it is fully warranted here.

Suspensions longer than 30 days "reflect extremely serious judicial misconduct, just shy of what might warrant removal from office." *Matter of Freese*, 123 N.E.3d 683, 688 (Ind. 2019). Respondent's misconduct permeated his entire 4-year career as probate judge. Further, his act of

keeping the source of funds anonymous suggests the misconduct was willful, undermining the integrity of the judiciary.

In *Freese*, we approved an agreed 45-day suspension for a judge who permitted a friend who had recently filed for bankruptcy to serve as trustee of a trust and personal representative of a related estate, despite the friend's lack of qualifications. *Id.* at 685. The estate remained pending for years, and the friend eventually absconded to Florida with over $500,000 in stolen trust funds. *Id.* at 687. We concluded that although the judge's misconduct was negligent rather than willful, it enabled a massive theft. *Id.* at 688. Like some of Respondent's misconduct, we recognized the judge's misconduct brought him no personal benefit or gain. But the judge in *Freese* had a lengthy and distinguished judicial career unblemished by previous discipline, while Respondent's misconduct began as soon as he assumed judicial office. *Id.* at 687.

Similarly, we approved a 90-day suspension for a judge who, in part, maintained a fiduciary relationship with a former client after assuming the bench and used her office to advance the private interests of that former client. *Matter of Hammond*, 559 N.E.2d 310 (Ind. 1990). We have further approved suspensions for the appearance of partiality in favor of friends or family members. *Matter of Funke*, 757 N.E.2d 1013 (Ind. 2001) (imposing a 15-day suspension); *Matter of Jacobi*, 715 N.E.2d 873 (Ind. 1999) (imposing a 3-day suspension).

The parties' proposed 45-day suspension is squarely within the range of sanction imposed for similar misconduct. "The purpose of judicial discipline is not primarily to punish a judge, but rather to preserve the integrity of and public confidence in the judicial system and, when necessary, [to] safeguard the bench and public from those who are unfit." *In re Hawkins*, 902 N.E.2d 231, 244 (Ind. 2009). The sanction must be designed to deter similar misconduct and assure the public that judicial misconduct will not be condoned. *Id*. Indeed, the personal statement Respondent submitted to this Court stresses he is hopeful his fellow judges will learn from his experience. We are as well.

# Conclusion

Consistent with our August 4, 2023 order in this matter, Jason A. Cichowicz shall be suspended from the office of Judge of the St. Joseph Probate Court without pay for forty-five (45) days commencing at 12:01 a.m. on September 5, 2023. The suspension shall terminate and Respondent shall automatically be reinstated to office at 12:01 a.m. on October 20, 2023. This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to this case. Stipulated costs in the amount of $3,824.00 have been assessed against Respondent.

Rush, C.J., and Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEYS FOR RESPONDENT
James F. Groves
South Bend, Indiana

Donald R. Lundberg
Lundberg Legal
Port Washington, New York

James J. Bell
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR INDIANA COMMISSION ON JUDICIAL QUALIFICATIONS
Adrienne L. Meiring, Counsel to the Commission
Stephanie K. Bibbs, Deputy Director
Larry D. Newman, Staff Attorney
Seth T. Pruden, Staff Attorney
Indianapolis, Indiana