



FILED

May 17 2024, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-JD-35

## In the Matter of the Honorable Scott A. Norrick, Judge of the Madison Circuit Court,

*Respondent.*

Decided: May 17, 2024

Judicial Discipline Action

**Per Curiam Opinion**

Chief Justice Rush and Justices Massa, Goff, and Molter concur.

Justice Slaughter dissents.

**Per curiam.**

"The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society." Preamble, Ind. Code of Judicial Conduct. Inherent in the judicial conduct rules are the principles that judges "must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system." *Id.*

Respondent, the Honorable Scott A. Norrick, Judge of the Madison Circuit Court, has fallen far short of these standards. Respondent engaged in judicial misconduct by: (1) failing to supervise his staff in the processing of orders, which resulted in him presiding over civil cases in which he or his son were the attorneys of record; (2) erroneously issuing an ex parte change-of-custody order without giving the opposing party notice or an opportunity to respond; and (3) failing to supervise his staff in the processing of criminal cases, which led to delays in issuing warrants, missing orders and chronological case summary ("CCS") entries, and involuntarily dismissing sixteen criminal cases.

Respondent's actions and inactions, which began the day he assumed office, damaged the administration of justice and public trust in the judiciary. They also caused individual harm to dozens of alleged victims, witnesses, and criminal defendants whose cases were dismissed or delayed because Respondent, through his staff, failed to update warrants, set trial dates, and reflect the outcome of hearings. Perhaps most alarming, these omissions were repeatedly brought to Respondent's attention but he took no action until the Indiana Commission on Judicial Qualifications ("Commission") began to investigate.

The matter is before us on the Commission's "Notice of the Institution of Formal Proceedings and Statement of Charges" against Respondent. The parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to the following facts.

# Background and Stipulated Facts

Respondent was elected judge of the Madison Circuit Court 5 in November 2020 and took office on January 1, 2021. The misconduct set forth in the conditional agreement began the day Respondent took office and continued through at least March 31, 2023.

## A. Conflicts of Interest—Landmark Accounts

Before Respondent's election, he was judge of Edgewood Town Court for about fifteen years, where he supervised three staff. During this time, Respondent represented client Landmark Accounts, Inc. in small claims matters. After Respondent's son was admitted to the bar in September 2020, he began practicing in Respondent's firm. And when Respondent took the bench in January 2021, his son took over representing Landmark Accounts.

In April 2022, the Commission received a complaint that Respondent was presiding over cases in which his son served as counsel and in which Respondent had previously served as counsel. Two months later, Respondent tendered a self-report that acknowledged presiding over the Landmark Accounts cases and admitted the measures he had undertaken to prevent that from happening had resulted in "errors by his court staff."

From January 20, 2021, to April 13, 2022, Respondent presided over twenty-seven cases in which his son appeared as counsel and Landmark Accounts was a party. He issued sixty-six signature-stamped orders in those cases, including orders granting the withdrawal of his own appearance as Landmark Accounts' attorney. MyCase listed Respondent as the judicial officer in multiple Landmark Accounts cases, even though a magistrate actually heard those cases. Respondent admits he failed to adequately supervise his staff in handling the Landmark Accounts cases, which led to the public perception that he was presiding over cases in which he had previously been counsel of record or his son was counsel of record.

## B. Missing Orders and CCS Entries in Criminal Cases

Prompted by the Landmark Accounts reports, the Commission issued a notice of investigation in January 2023. While this investigation was ongoing, the Commission received a report that there were criminal cases in Respondent's court with missing case entries and orders, and so in April 2023, the Commission amended its notice of investigation.

Further investigation revealed that from January 1, 2021, to March 31, 2023, there were about forty criminal cases with missing entries and orders. These missing items included: (1) failure to update warrants accurately; (2) failure to set jury trial dates; (3) failure to reflect what took place at certain hearings; and (4) failure to state whether future hearing dates were needed. More specifically:

- When the judge ordered the bond revoked for a defendant who violated pretrial release, the CCS entry revoking bond was withdrawn and the case was never placed back on the docket; it was then dismissed on Criminal Rule 4(C) grounds.
- When the judge recalled a warrant of a defendant charged with resisting law enforcement, and staff input an entry recalling the warrant, no hearing was scheduled; the case was then dismissed on Criminal Rule 4(C) grounds.
- Court staff failed to update the docket regarding what took place during a bench trial that had been postponed and failed to set a future hearing date.
- Court staff mistakenly updated the docket to withdraw a warrant for a defendant charged with residential entry; the mistake was not corrected (and the warrant was not reissued) for nearly five months.
- No future dates were set in at least thirty-six pending cases.

Ultimately, these missing entries and orders led to the dismissal of sixteen cases because the defendants were not timely tried under Criminal Rule 4(C).

During the investigation, the Commission also discovered a pattern of delay in issuing criminal orders in Respondent's court. Multiple people made Respondent aware of these delays, including other judges and members of the prosecutor's office, and they told Respondent his lead

criminal court reporter was four or five weeks behind on completing case entries. Despite being on notice of these concerns, for two years Respondent failed to undertake any efforts to review criminal cases, including whether an appropriate entry or order had been made or whether the matter had been scheduled for a future court date.

The Commission identified at least seven cases in which there was a significant delay in issuing a warrant, with delays ranging from thirty days to sixteen months. These delays all involved Level 6 felonies, including charges of battery against a public safety official, domestic battery, strangulation, auto theft, neglect of a dependent, possession of methamphetamine, and residential entry.

And in another Level 6 felony case, *State v. Reynolds*, Respondent did not issue an order for more than six months. In August 2022, Respondent took the State's motion to reconsider alternative misdemeanor sentencing under advisement. Respondent provided his court reporter with a signed order in November 2022, but she failed to issue and distribute it. In February 2023, the prosecutor brought the delay to the court reporter's attention, and the court reporter told Respondent she could not find the order. Respondent gave her another copy, but she failed to enter and distribute it until Respondent **again** brought it to her attention in March 2023—two months after the Commission issued its notice of investigation on the Landmark Accounts matters.

## C. Erroneously Stamped Custody Orders in *Matter of H.M.*

In April 2023, Respondent made another self-report about the erroneous issuance of an ex parte custody order in *Matter of H.M.*, a custody dispute.

There, in May 2022, Respondent ordered temporary joint legal and physical custody of the minor child. On April 12, 2023, one party moved for emergency modification of custody and requested an expedited hearing. Later that day, an order granting the motion was issued with Respondent's electronic signature.

Under Trial Rule 65(B), a temporary restraining order may be granted without notice only if "it clearly appears from specific facts shown by

affidavit or by the verified complaint that immediate and irreparable injury … will result to the applicant before the adverse party or his attorney can be heard in opposition," and "the applicant's attorney certifies to the court in writing the efforts, if any, [that] have been made to give notice[.]" The court granting the order, in turn, must "define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed ten [10] days…"

Respondent's self-report stated "court staff had erroneously affixed Respondent's signature electronically to an order that modified custody" in *Matter of H.M.* without all parties first being heard. This order did not comply with Trial Rule 65(B).

On Thursday, April 13, the day after Respondent issued the ex parte order, counsel for the opposing party moved to correct error. And on Tuesday, April 18, Respondent granted the motion and vacated his April 12 order. Respondent stated he had instructed his court reporter to schedule the matter for hearing and failed to review the order before it was sent to the parties. Respondent's self-report also stated this was the second time an order had been erroneously issued in *Matter of H.M.*; in May 2022, Respondent issued an order striking an April 2022 order setting temporary custody to one party.

## Discussion

Respondent agrees his conduct violated the following Code of Judicial Conduct provisions:

- Rule 1.2, requiring judges to avoid impropriety and act at all times in a manner promoting public confidence in the judiciary's integrity;
- Rule 2.5(A), requiring judges to perform judicial and administrative duties competently, diligently, and promptly; and
- Rule 2.12(A), requiring judges to supervise court staff to act in a manner consistent with the judge's obligations under the Code of Judicial Conduct.

In aggravation, the parties note that Respondent has already been privately cautioned by the Commission for violating Rule 2.12(A). In mitigation, they cite Respondent's cooperation with the Commission, acceptance of responsibility for his misconduct, and efforts to undertake additional training to prevent this misconduct from recurring.

The parties agree that an appropriate sanction is a forty-five-day suspension without pay.[1] Suspensions longer than thirty days "reflect extremely serious judicial misconduct, just shy of what might warrant removal from office." *Matter of Freese*, 123 N.E.3d 683, 688 (Ind. 2019). The scope of Respondent's misconduct—which began as soon as he took office in 2021, impacted multiple facets of his caseload and management duties, and led to over a dozen criminal cases being involuntarily dismissed—warrants such a severe sanction.

Respondent, through his staff, issued sixty-six orders in Landmark Accounts cases—including orders granting Respondent's own withdrawal as Landmark Accounts's attorney. This led to the public perception that Respondent presided over dozens of cases in which he or his son appeared as counsel.

Respondent's pattern of failing to take judicial action in criminal cases led to the dismissal of sixteen criminal cases; missing orders and CCS entries meant the defendants were not timely brought to trial. Not only does this harm the administration of justice generally, but it also individually harms the witnesses and alleged victims who cooperated in the prosecution of those actions. Several of the cases with missing entries involved domestic battery in the presence of a child, strangulation, and residential entry. And despite being made aware of these delays and omissions by multiple people, including his fellow judges, Respondent failed to take any corrective action until the Commission began receiving complaints.

---

[1] The parties have also agreed that Respondent will complete nine additional hours of judicial education, including topics of proper case management and the exercise of supervisory duties, and he will meet with another judge in a mentorship role to provide guidance and support in addressing these topics.

Misconduct like Respondent's has led to the most severe sanction the Court can impose—removal of a sitting judge and a permanent ban on judicial office. In *Matter of Kouros*, we removed a Lake Superior Court judge from office for failing to promptly issue orders in criminal cases for several years and for misleading State Court Administration about her compliance with this Court's orders. 816 N.E.2d 21, 22 (Ind. 2004).

In 2001, after receiving reports that the judge often delayed issuing written sentencing orders, we entered an administrative order requiring the other Lake Superior Court judges to review the delays and submit a plan for addressing the issue. The judges' report revealed there were 330 files in Judge Kouros's office awaiting the entry of orders and return to the clerk's office; it also stated the judge had initiated a new method of processing docket entries that should prevent further delays. But the delays continued, and in 2002, the Court asked State Court Administration staff to monitor Judge Kouros's case processing. Staff soon discovered more than 200 files that were missing case entries.

The Commission filed disciplinary charges, and after a hearing, the special masters issued a report finding grounds for discipline but declining to recommend any specific sanction. We ultimately removed the judge from office, concluding this most severe sanction was necessary to protect the integrity of the judicial system and to ensure the fair and timely administration of justice. Aggravators included Judge Kouros's experience, her persistent failure to perform her judicial duties over several years, the misimpressions she gave the Court about her cooperation with our order, and that the misconduct "affected not only the parties . . . but also others interested in the efficient operation of the criminal justice system." *Id.* at 30.

*Kouros* weighed heavily on our analysis in *Matter of Hawkins*, where we suspended the respondent judge from office for sixty days for a pattern of excessive delays in ruling on petitions for post-conviction relief. 902 N.E.2d 231, 233, 244–46 (Ind. 2009). Delays ranged from six months to nearly two-and-a-half years, and in one case, led to a two-year delay in releasing a defendant from prison. While the delays were attributed to the court's commissioner, who agreed to a permanent ban on judicial office for her misconduct, the judge was charged with failure to supervise.

As in *Kouros*, the judge's lack of candor enhanced the discipline imposed in *Hawkins*. The judge told Commission counsel "[t]he attorneys didn't write or call" to follow up on the delay in the defendant's release from prison, but the evidence showed both the defendant and his attorney had contacted the court, in writing, on several occasions. *Id.* at 236. And during the Commission's investigation, the defendant's file disappeared, then reappeared without explanation and with some documents missing. The masters stated they would have recommended a suspension without pay for Judge Hawkins's mishandling of PCR cases, but they ultimately recommended he be removed from office for "failing to correct the misimpressions he and his staff gave to the Commission" during its investigation. *Id.* at 244. The Court was split, with three Justices concurring in a sixty-day suspension (though two would also have favored thirty days) and two Justices indicating they would have suspended the judge for one or two years.

Four years later, another Marion Superior Court judge was charged with a pattern of mishandling criminal matters, among other ethical violations. In *Matter of Brown*, after a contested hearing, we removed the judge from office for her "mismanagement, delays, and dereliction of judicial duties on cases; … failure to complete necessary paperwork and adequately train or supervise court staff, which resulted in delayed releases of defendants from jail; and failure to cooperate with members of the Marion Superior Court's Executive Committee to address the underlying issues that led to the delayed releases." 4 N.E.3d 619, 621 (Ind. 2014).

The judge's admitted violations included routinely removing case files from file drawers and storing them in her office, where staff could not find them. She also delayed ruling on cases for months or even years. The most egregious example was her failure to vacate a conviction for a defendant after the Court of Appeals reversed and remanded for a new trial in 2010; the omission was not corrected until 2013, when a new judge was assigned to the court.

Judge Brown was also charged with delaying ten defendants' release from jail, the delays ranging from one to twenty-two days. The Court determined these delays resulted from the judge's failure to complete minute-entry paperwork and train, instruct, and supervise her staff. The

Court also noted the judge was alerted to several delayed releases in January 2013 but did not hold a staff meeting to address correcting the errors until late April or early May, and several more delayed releases continued through the summer.

In *Brown*, as here, various people alerted the judge to delayed jail releases, missing paperwork, and other problems in processing criminal cases. Judge Brown repeatedly failed to follow up on these concerns and further refused to cooperate with the Executive Committee when other judges offered help. The Court determined Judge Brown's misconduct was "more widespread and egregious" than the misconduct at issue in *Hawkins*, and "most closely resembles *Kouros* in the scope and effect[.]" *Id.* at 628–29. It cited her prior experience as a small claims court judge, noting that like Judge Kouros (and Respondent here), she was "not a novice" judge when the misconduct occurred. *Id.* at 629.

The proposed forty-five-day suspension in the instant case is a less severe sanction than in *Kouros*, *Hawkins*, and *Brown*. But these other cases were each decided after a hearing. Conditional agreements, on the other hand, "are often the product of lengthy negotiations and may merit a less severe sanction than might otherwise be imposed after a trial on the merits." *Matter of Meade*, 200 N.E.3d 448, 452 (Ind. 2023). The *Kouros* line of cases are also distinguishable in that they involve claims the judges misled the Commission or failed to provide accurate information to the Court. *See, e.g.*, *Hawkins*, 902 N.E.2d at 244 (noting the masters recommended the judge be suspended for the underlying misconduct but removed for his failure to correct misimpressions).

But like *Kouros* and *Brown*, Respondent's misconduct was not isolated; and he failed to act when others repeatedly brought delays and omissions to his attention. Moreover, unlike in *Kouros* and *Hawkins*, Respondent's misconduct extended well beyond the failure to supervise the processing of criminal cases. Respondent's staff issued orders in dozens of civil cases in which he or his son were listed as counsel, along with an ex parte order that granted a change of custody without giving the opposing party notice or a chance to respond.

We are troubled by the extent of this misconduct, particularly given Respondent's prior discipline on failure-to-supervise issues and his fifteen years of experience as a town court judge. Respondent has agreed to complete additional judicial education and meet with a mentor judge to support him in handling the court's caseload and supervising court staff. We expect Respondent to take full advantage of these opportunities to improve his court management skills.

# Conclusion

Respondent, Scott A. Norrick, shall be suspended without pay from the office of Judge of the Madison Circuit Court for forty-five (45) days commencing at 12:01 a.m. on June 3, 2024. The suspension shall terminate and Respondent shall be automatically reinstated to office at 12:01 a.m. on July 18, 2024. This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to this case. The Masters appointed in this case are discharged, and we thank them for their conscientious service in this matter.

All Justices concur except Slaughter, J., who would reject the conditional agreement, believing more severe discipline is warranted.

ATTORNEY FOR RESPONDENT
James J. Bell
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR INDIANA COMMISSION ON JUDICIAL QUALIFICATIONS
Adrienne L. Meiring, Counsel to the Commission
Jill Esenwein, Staff Attorney
Mark Conner, Staff Attorney
Indianapolis, Indiana